Ray and Carol CLAXTON, Appellant,

v.

(UPPER) LAKE FORK WATER CON-
TROL AND IMPROVEMENT DIS-
TRICT NO. 1, Appellee.

No. 06–06–00095–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Dec. 18, 2006.

Decided Dec. 19, 2006.

Opinion Granting Rehearing
May 2, 2007.

Rehearing Overruled May 22, 2007.

John T. Palter, Riney Palter, PLLC, Dallas, for appellant.

Buford A. Cates, Jr., Dallas, for Billy & Barbara Lynn.

Roland M. Ferguson, Sulphur Springs, for Upper Lake Fork Water Control & Improvement District No. 1.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

In this dispute concerning drainage of a lake, two different judgments were signed, the first apparently signed July 12, 2002, favoring Ray and Carol Claxton, and the second signed July 19, 2006, favoring (Upper) Lake Fork Water Control and Improvement District No. 1. The Claxtons appeal from the 2006 judgment. Because we determine that the 2002 judgment became the final judgment in this case, we dismiss the appeal for lack of jurisdiction.

In order to explain our analysis, we provide a chronology of the lawsuit, including two substantial periods of inactivity.

June 1996 Claxtons seek injunction against District.

11/4/1996 (Upper) Lake Fork, as third party plaintiffs, add Billy and Barbara Lynn as third party defendants.

3/26/1997 Claxtons add the Lynns as defendants.

6/19/1997 Claxtons seek summary judgment against all defendants.

6/18/2002 Claxtons file motion for partial summary judgment.

7/12/2002 Judgment signed. Court grants partial summary judgment, Claxtons nonsuit all claims against Lynns, and all other claims against District, and District nonsuits all third party claims against the Lynns. Decretal language in judgment specifically renders judgment on all of the above and states that the judgment is final, that this is the final judgment, and that all relief not expressly granted is denied. The judgment is signed as "approved as to form and substance" by counsel for Claxtons and District.

9/6/2002 Judgment filemarked.

10/3/2002 District files motion for new trial.

11/15/2002 Order filed granting new trial.

8/22/2005 Claxtons again nonsuit Lynns.

9/1/2005 Claxtons file second motion for partial summary judgment against District, essentially same as original motion.

3/24/2006 District files motion for summary judgment.

3/27/2006 Claxtons file third motion for partial summary judgment against District, essentially the same as first and second motions.

7/19/2006 Final judgment signed.

1) Claxtons' third motion for partial summary judgment denied.

2) District's motion for summary judgment granted.

The question confronting us is jurisdiction. The failure of a jurisdictional requirement deprives a court of the power to act (other than to determine that it has no jurisdiction). *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser,* 140 S.W.3d 351, 359 (Tex.2004). And once a court determines that it has no jurisdiction, its only legitimate choice is to dismiss. *State of Tex. v. Morales,* 869 S.W.2d 941, 949 (Tex.1994).

The judgment containing a signature date of July 12, 2002, disposes of all claims and parties in this lawsuit, and not only states that it is the final judgment, but was approved both as to form and substance by counsel for the two remaining parties. It appears, from its face, that it was therefore final on that date. All of the relevant timetables begin to run on the date that a judgment is signed. A motion for new trial must be filed within thirty days of that date. TEX.R. CIV. P. 329b. The date on which a notice of appeal must be filed is also calculated based on the date on which the judgment is signed. TEX.R.APP. P. 26.1.

■ If the July 12, 2002, judgment was the final judgment in this case, as it says it is, then we must determine whether the case was timely appealed with reference to that date. Using that date, only one result is possible—the notice of appeal filed September 18, 2006, was untimely and could not establish our jurisdiction.

We contacted the parties in connection with this issue, and have received briefing setting out their positions. Essentially, the Claxtons agree that the 2002 judgment is final, and now ask us to dismiss their appeal for want of jurisdiction.

The District takes the position that we should disregard the notation on the judgment as to the date it was signed, because it was actually signed on the date it was ultimately filed. The extensive record provided contains nothing to support that position, other than the District's pleadings. The trial court's order granting the District's motion for new trial states that the prior agreed judgment "entered on September 6, 2002 (but bearing the erroneous date of July 12, 2002) should be, and it is hereby in all things, vacated and set aside."

■ Even if the trial court had the jurisdiction to grant the motion for new trial—which on its face it did not—and assuming that some error exists in the face of a judgment signed as correct in form and substance by all counsel, and even if this were a document properly rendering a new judgment, it does not state the correct date on which the judgment was signed, and could not be used by this Court to establish a signing date different from that on the face of the judgment.[1]

The question of our jurisdiction to hear an appeal of this case then depends on the determination of which of the two signed judgments is the valid one. There can only be one final judgment. Tex.R. Civ. P. 301. A trial court retains plenary power to grant a new trial or to vacate, modify, correct, or reform a judgment within thirty days after the judgment is signed. Tex.R. Civ. P. 329b(d); *First Alief Bank v. White*, 682 S.W.2d 251, 252 (Tex.1984). After the expiration of those thirty days, the trial court has no authority to set aside a judgment except by bill of review as provided by law. Tex.R. Civ. P. 329b(d); *Thursby v. Stovall*, 647 S.W.2d 953, 954 (Tex.1983).

■ The trial court lost its plenary power to vacate the judgment August 11, 2002. The trial court therefore had no jurisdiction to enter the November 15, 2002, order granting a new trial some 126 days after the signing of the first judgment. *State ex. rel. Latty v. Owens*, 907 S.W.2d 484, 486 (Tex.1995). Judicial action taken after the court's jurisdiction over a cause has expired is a nullity. *Id.*

■ Even if both parties agreed that a different date actually existed, we are constrained by the rules to determine our jurisdiction by reference to the date on which the judgment was signed—a party cannot confer or waive jurisdiction by consent or agreement. *Stine v. State*, 908 S.W.2d 429 (Tex.Crim.App.1995). Appellate jurisdiction cannot be created by consent, stipulation of the parties, or waiver, either by the court or by litigants. *Welder v. Fritz*, 750 S.W.2d 930 (Tex.App.-Corpus Christi 1988, no writ). Jurisdiction is fundamental and cannot be ignored by this Court or waived by the parties. *In re Marriage of Johnson*, 595 S.W.2d 900, 902 (Tex.Civ.App.-Amarillo 1980, writ dism'd w.o.j.). Further, lack of appellate jurisdic-

---

1. An order nunc pro tunc, correcting only a true clerical error, may be granted by a trial court at any time, even after it has lost jurisdiction over the case. *America's Favorite Chicken v. Galvan*, 897 S.W.2d 874 (Tex.App.-San Antonio 1995, writ denied).

tion is fundamental error, which can be raised by the court sua sponte. *New York Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677, 679 (Tex.1990).

We have no option in this case but to recognize the state of the record before us and to act accordingly.

The appeal is dismissed for want of jurisdiction.

## OPINION ON REHEARING

In a protracted legal battle in Hopkins County pitting Ray and Carol Claxton against the (Upper) Lake Fork Water Control and Improvement District No. 1, the District first lost. A considerable time later, the trial court—after granting a new trial to the District—ultimately changed course and found for the District.

Our initial opinion dismissed the Claxtons' appeal for lack of jurisdiction. We based that dismissal on apparently jurisdictional facts revealed by the appellate record, starting with the earlier judgment—against the District—which recited a signing date of July 12, 2002. We concluded then that the District's subsequently filed, and granted, motion for new trial had been filed too late to give the trial court any power to grant it. The result of our ruling was that the later, and ultimate, trial court judgment—dated July 19, 2006, and *favoring* the District—was without effect, since our ruling was that the 2002 judgment—favoring the Claxtons—had become the final judgment. After our initial opinion was issued, the District obtained from the trial court a January 16, 2007, judgment nunc pro tunc changing the signing date recited in the 2002 judgment from

July 19, 2002, to September 6, 2002.[2] If that nunc pro tunc change is effective, the District's 2002 motion for new trial was timely and therefore the 2006 judgment favoring the District is the final judgment of the trial court. Because we reach just that result in this opinion, we reinstate the appeal.

In its motion for rehearing, the District urges us to find valid the changes made by the nunc pro tunc judgment and thus recognize the later trial court judgment favoring the District. In their response, the Claxtons argue that, for a few reasons, we should disregard the nunc pro tunc judgment and recognize the 2002 judgment as the final judgment of the trial court. We disagree because (1) the 2002 judgment's originally recited date of signing was a clerical error, (2) the originally recited signing date is not binding as part of any agreement of the parties, and (3) the date change is supported by the record.

*(1) The 2002 Judgment's Originally Recited Judgment Date Was a Clerical Error*

■ The Claxtons assert that the nunc pro tunc date change was substantive or judicial in nature, and was thus not authorized. We conclude otherwise.

■ Clerical mistakes in a judgment may be corrected by the judge in open court, and judgment nunc pro tunc rendered by the trial court, according to the truth or justice of the case. TEX.R. CIV. P. 316. This may be done even after the expiration of the court's plenary power. TEX.R. CIV. P. 329b(f). Judicial errors, however, may not be corrected after the expiration of a court's plenary jurisdiction.

**2.** The new judgment, at its beginning, states that the motion for summary judgment came on for hearing September 6, 2002—a date contrary to the notation originally made on the trial court docket—and contains a corrected signature date of September 6, 2002. Ex-

cept for those details, the nunc pro tunc judgment is a complete duplicate of the prior judgment, including the original typographical errors. It was filed with the district clerk January 16, 2007.

*Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex.1986).

        A clerical error is an error which does not result from judicial reasoning or determination. *Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex.1986). A judicial error is one which occurs in the rendering, as opposed to the entering, of a judgment. *Escobar*, 711 S.W.2d at 231; *Delaup v. Delaup*, 917 S.W.2d 411, 413 (Tex.App.-Houston [14th Dist.] 1996, no writ).

One type of situation exists when a judgment is substantively incorrect because of a mistake of counsel.[3] In that situation, the judgment is not erroneous, it does not provide different relief from that requested or pronounced in open court—it is simply not the relief anticipated by the parties. When such a mistake is made and memorialized accurately by the trial court, any change is judicial in nature. It may be a mistake, but it is not the result of a clerical error: thus, a nunc pro tunc judgment is not available.

A different situation is presented where a written judgment is ultimately signed that differs from the terms of the judgment as pronounced by the court.[4] In that situation, a nunc pro tunc judgment is available, because the written judgment does not comport with the prior rendering.

        This case presents a third nunc pro tunc situation. It is an error that does not substantively alter the relief provided by the judgment. A judgment nunc pro tunc may be issued to correct the recited signing date of an order if the original recited date is shown to have been incorrect. *See Traylor Bros., Inc. v. Garcia*, 949 S.W.2d 368, 369 (Tex.App.-San Antonio 1997, no writ). Consistent with the definition of the term, however, an order nunc pro tunc may not be used to backdate the signing of a written order that was not in fact signed earlier. *In re Taylor*, 113 S.W.3d 385, 393 (Tex.App.-Houston [1st Dist.] 2003, orig. proceeding); *see Jauregui Partners, Ltd. v. Grubb & Ellis Commercial Real Estate Servs.*, 960 S.W.2d 334, 337 (Tex.App.-Corpus Christi 1997, writ denied). In other words, it cannot be used as a fiction to alter signing dates—it must reflect reality.[5]

In the present case, after conducting a hearing and reviewing the contemporaneous documents, the trial court concluded the indicated date was incorrect. In its order, the trial court stated that it did not actually sign the judgment on that earlier date, but signed it approximately two months later.[6]

Accordingly, for the preliminary purposes of determining our jurisdiction over this appeal, we conclude that the correction was clerical in nature and that the remedy of judgment nunc pro tunc was available.[7]

---

**3.** *Dikeman v. Snell*, 490 S.W.2d 183, 185–86 (Tex.1973).

**4.** *See Andrews*, 702 S.W.2d at 585; *Delaup*, 917 S.W.2d 411; *Petroleum Corp. v. First Nat'l Bank*, 622 S.W.2d 152 (Tex.App.-Fort Worth 1981, writ ref'd n.r.e.).

**5.** Typical clerical changes to judgments that have been upheld include corrections of the date of judgment, *Nolan v. Bettis*, 562 S.W.2d 520, 523 (Tex.Civ.App.-Austin 1978, no writ), correction of a party name, *Carlyle Real Estate Ltd. Partnership–X v. Leibman*, 782 S.W.2d 230, 233 (Tex.App.-Houston [1st Dist.]

1989, no writ), and correction of a numerical error, *Escobar*, 711 S.W.2d at 232.

**6.** "Dates contained in judgments have been held on many occasions to be the type of errors that are correctable by judgment nunc pro tunc." *Ortiz v. O.J. Beck & Sons, Inc.*, 611 S.W.2d 860, 863 (Tex.Civ.App.-Corpus Christi 1980, no writ); *see Traylor Bros., Inc.*, 949 S.W.2d at 369.

**7.** The Claxtons assert that there were also judicial changes in the 2002 judgment. Certainly, a judgment nunc pro tunc may alter

#### (2) The Originally Recited Judgment Date Is Not Binding as Part of Any Agreement

■ The Claxtons argue that, because the July 2002 judgment was an agreed judgment, as shown by counsel's signature agreeing as to form and substance, the District could not now attack the judgment's terms, including the date of signature.

■ After its preparation, the judgment was then approved not only as to form (a usual and harmless procedure), but as to substance as well by the attorneys representing both parties. Approval as to form is a matter of professional courtesy not necessary to a valid judgment. Approval as to form does not waive any error in the proceedings or incident to the judgment itself. *Sandoval v. Rattikin,* 395 S.W.2d 889 (Tex.Civ.App.-Corpus Christi 1965, writ ref'd n.r.e.). Approval as to substance is something else. Approval of the substance of a judgment has been described as tantamount to an agreement by the signatory that the judgment meets all of its essential requirements. *Cisneros v. Cisneros,* 787 S.W.2d 550, 552 (Tex.App.-El Paso 1990, no writ).

■ An agreed judgment means essentially the same thing as a judgment by consent. A judgment by consent is a judgment in which the terms are settled and agreed to by the parties and which is entered of record by authorization of the trial court. *Matthews v. Looney,* 132 Tex. 313, 123 S.W.2d 871 (1939); *Johnson v. Rancho Guadalupe, Inc.,* 789 S.W.2d 596, 603 (Tex.App.-Texarkana 1990, writ denied).

While the 2002 judgment may have been an agreed or consent judgment, we find no reason to conclude the recited date of signing was actually a material part of any agreement of the parties. The best witness that the parties did not consider the judgment's recited signing date as material to their agreement is the uniform manner in which all parties overlooked the July 2002 recited date until this Court pointed it out in 2006.

Additionally, the signing dates recited in judgments are intended to reflect reality, not some different agreement of the parties. "Judges, attorneys and clerks are directed to use their best efforts to cause all judgments ... to be reduced to writing and signed by the trial judge with the date of signing stated therein." Tex.R. Civ. P. 306a(2). The rule contemplates that each judgment should accurately reflect the date it was actually signed by the court; it does not seem to contemplate allowing parties to include an agreed date of signing into the terms of consent judgments.

We decline to treat the originally recited judgment signing date as part of any agreement of the parties.

#### (3) The Date Change Is Supported by the Record

■ The Claxtons also argue that the nunc pro tunc judgment is unsupported by the record. They assert that the information available to the trial court was insufficient to allow it to determine that the date of signing was erroneous.

■ For a judgment nunc pro tunc to be properly granted, the evidence must be clear and convincing that a clerical error

---

nothing other than clerical matters. But, even if the corrected 2002 judgment differs from the original one in judicial matters, any such differences are irrelevant at this stage. The 2002 judgment was entirely superseded by the 2006 judgment, if the 2006 judgment was effective to do so. The only currently relevant part of the 2002 judgment is the date it was signed. That date determines whether the 2006 judgment was effective.

was made. *Avila v. Lone Star Radiology,* 183 S.W.3d 814, 821 (Tex.App.-Waco 2005, no pet.); *Barton v. Gillespie,* 178 S.W.3d 121, 127 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *In re Broussard,* 112 S.W.3d 827, 833 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding).

▇▇▇ That evidence may come from a number of sources, including oral testimony, written documents, previous judgments, docket entries, or the trial judge's personal recollection. *Riner v. Briargrove Park Prop. Owners, Inc.,* 976 S.W.2d 680, 683 (Tex.App.-Houston [1st Dist.] 1997, no writ). Further, "if [the trial judge] corrects the judgment nunc pro tunc, a presumption arises that his personal recollection supports the finding of clerical error." *Pruet v. Coastal States Trading, Inc.,* 715 S.W.2d 702, 705 (Tex.App.-Houston [1st Dist.] 1986, no writ). Moreover, recitations in a nunc pro tunc judgment alone may,

> provide sufficient evidence that the court relied upon its recollection of the facts at the time the original judgment was rendered, [that] [s]uch recollection raises the presumption of the court's finding that clerical error had occurred in the entry of the [judgment], and that the nunc pro tunc judgment correctly reflects the judgment rendered.

*Id.; Thompson v. Tex. Dep't of Human Resources,* 859 S.W.2d 482, 485 (Tex.App.-San Antonio 1993, no writ). The trial judge's recollection of facts has the dignity and force of evidence. *Ft. Worth & D.C. Ry. Co. v. Roberts,* 98 Tex. 42, 81 S.W. 25, 26 (1904); *Blum v. Neilson,* 59 Tex. 378 (1883); *Wood v. Paulus,* 524 S.W.2d 749,

756 (Tex.Civ.App.-Corpus Christi 1975, writ ref'd n.r.e.).

▇▇▇ Even though it is presumed that the trial judge's personal recollection supports the finding of a clerical error,[8] the record from the hearing on the motion for judgment nunc pro tunc may negate any such presumption through evidence to the contrary. *In re Fuselier,* 56 S.W.3d 265, 268 (Tex.App.-Houston [1st Dist.] 2001, orig. proceeding). This is consistent with the requirements of Rule 316 of the Texas Rules of Civil Procedure, which requires that such clerical mistakes may "be corrected by the judge in open court according to the truth...." *See* TEX.R. CIV. P. 316. Though a fairly loose version of evidence is allowed, with cases relying on the judge's recollections and on the argument of counsel, nevertheless, that evidence must be sufficiently clear and convincing to allow the trial court to conclude that clerical error exists.

In this case, the record now contains a transcription of a brief hearing held January 17, 2007. At the hearing, the trial court reviewed the court's files and examined the transcript of the September 2002 hearing.

The trial court stated in its January 16, 2007, order that it decided to grant the judgment nunc pro tunc based on its review of the "Court's official file (including the official transcript of the proceedings occurring on 09/06/02 in open court)...."[9]

The District argues that the trial court's determination is supported by the record because the earlier date was logically absurd.[10] It bases this conclusion on several

---

8. *Davis v. Davis,* 647 S.W.2d 781, 783 (Tex. App.-Austin 1983, no writ); *Bockemehl v. Bockemehl,* 604 S.W.2d 466, 469 (Tex.Civ. App.-Dallas 1980, no writ).

9. Both parties have attached copies of the fifteen-page transcription to their briefs, and it has now been provided to the Court as a supplemental record.

10. The District also posits a physical impossibility argument—that it was impossible for the July 12 date to be the correct one because

factors. One is the obvious fact that no party treated the motion for new trial as being untimely—even though, based on the stated date of signing, it clearly was. All parties simply continued filing pleadings as though the motion for new trial was timely. As the District points out, no party resisted the 2002 motion for new trial based on a lack of jurisdiction, and, before this Court reviewed the record and recognized the problem, this issue was never raised.

Certainly, a party cannot confer or waive jurisdiction either by consent or agreement. *Stine v. State*, 908 S.W.2d 429 (Tex.1995). The mere fact that the parties behaved as though the trial court retained jurisdiction over the case does not confer jurisdiction to the court. But the behavior by both counsel and trial court on such an absolutely basic concept supports a conclusion that everyone involved knew the 2002 judgment was not actually signed on the earlier date. The District argues that the sole explanation for the behavior of all involved was clearly that the judgment was not signed until the later date.[11]

Foolish or perfunctory behavior by counsel or court is a staple of appeals. Although we would prefer to think that such errors would not occur, they do. Counsel for the District has directed us to no specific portion of the reporter's record from the September 2, 2002, hearing to support the argument that the evidence clearly supports the court's decision. Given the brevity of the record, however, we have nonetheless reviewed the transcription of that hearing to see if it supports the court's ruling. It does.

The September hearing commenced with only one attorney present, representing the Lynns.[12] The court acknowledged that the District and the Claxtons had sent in an agreed order granting the motion for summary judgment. The trial court then questioned the Lynns' counsel at length about any ability they might have to complain about the judgment in the absence of any affirmative cross-pleadings against either the Claxtons or the District. The Lynns' counsel repeatedly asked the court not to enter the order just because the two parties agreed to it. On page seven of the record, counsel stated,

> [A]s I understand it, Your Honor, we're a party **until you sign** an order granting a nonsuit. And **if you've not signed that,** we're a party. And being a party, we would like the opportunity to address the Court to tell the Court why it shouldn't enter this order. . . .

(Emphasis added.) On page twelve of the record, counsel stated, "I would like for the Court to know that by the order that's submitted to you, **if you sign it,** you will be ordering. . . ." (Emphasis added.) At the end of the hearing, the trial court stated that it would grant the nonsuit and then "will enter the agreed order between the two remaining parties." That dialogue

the District would have been required to file its motion for new trial on a date before the September 6, 2002, hearing—the date on which the judgment was actually signed. This argument is circular. The "impossibility" is based on the assumption that the later date is correct, which is the issue the District is trying to prove by showing impossibility.

**11.** The alternative, according to the District's brief, was that this is the only rational expla-

nation for what would otherwise be "outrageously irresponsible (if not downright dumb) behavior by both the Trial Court and the parties' counsel. . . . in completely ignoring the procedural provisions of Rule 329b."

**12.** The Lynns were defendants in the case, but all claims against them were disposed of by nonsuit, as reflected in the judgment.

seems to demonstrate that the judgment was indeed signed in September, not July.[13]

In the January 16, 2007, nunc pro tunc hearing, the trial court reviewed the transcription of the prior hearing, heard argument by counsel, and reviewed a letter dated September 3, 2002, that appears to be a transmittal letter accompanying a delivery of the 2002 judgment to the trial court just before the September 6 hearing.

The trial court did not state either in writing or orally that it was relying on its personal recollection to determine that an error existed, and the discussion between counsel and court at the hearing suggests to the contrary. In that situation, we will not conclusively presume that it was doing so, especially in light of the five-year delay between the judgment and the judgment nunc pro tunc. *See Pruet,* 715 S.W.2d 705; *Thompson,* 859 S.W.2d at 485.

The same judge was involved, however, and he determined that the error existed. It is reasonable to assume he recalled the context of the September 2002 hearing, at least once his recollection was refreshed in 2006. The language used in the 2002 hearing is best understood as indicating that the proposed judgment had not been signed to that point. That conclusion is further supported by the transmittal letter reviewed by the court. There is factually and legally sufficient evidence to support the rendition of the judgment nunc pro tunc.

Because the nunc pro tunc change in the recited judgment date was valid, the District's subsequent motion for new trial was timely. Therefore, the subsequent, 2006, judgment was effective and became the final judgment of the trial court.

We grant the District's motion for rehearing and reinstate the appeal.

---

13. A potential problem with this evidence lies in the fact that "entering" a judgment and "signing" a judgment are by no means synonymous concepts. We also recognize that the terms are unfortunately often loosely used by attorneys and judges. A judgment routinely goes through three stages: (1) rendition, (2) signing, and (3) entry. *Gen. Elec. Capital Auto Fin. Leasing Servs., Inc. v. Stanfield,* 71 S.W.3d 351, 354 (Tex.App.-Tyler 2001, pet. denied); *In re Wilburn,* 18 S.W.3d 837, 840 (Tex.App.-Tyler 2000, pet. denied); *Oak Creek Homes, Inc. v. Jones,* 758 S.W.2d 288, 290 (Tex.App.-Waco 1988, no writ). The judgment becomes effective once it is "rendered." *Stanfield,* 71 S.W.3d at 354; *Wilburn,* 18 S.W.3d at 840. A judgment is "rendered" when the matter submitted to it for adjudication is officially announced either orally in open court or by memorandum filed with the clerk. *Samples Exterminators v. Samples,* 640 S.W.2d 873, 875 (Tex.1982); *Wilburn,* 18 S.W.3d at 840.

In this case, we conclude that, although the language was inaccurately used, court and counsel were actually discussing "signing" rather than "entering" the judgment. So taken, the transcription supports the court's ultimate conclusion that it signed the judgment on the later date.