

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00138-CV

IN RE W.L.W. RELATOR

----------

### ORIGINAL PROCEEDING

----------

## OPINION

----------

### I. INTRODUCTION

Relator Wade White seeks mandamus relief from the trial court's February 7, 2012 order denying his motion to reconsider a prior order denying his plea to the jurisdiction and permitting Real Party in Interest Deborah White to conduct discovery in furtherance of her post-judgment action to clarify or enforce a divorce decree. We will conditionally grant the petition.

### II. BACKGROUND

Wade was a greater-than-50% shareholder of Republic Intelligent Transportation Services, Inc. (Republic ITS) when in December 2007, in his

capacities as president of Republic ITS, a shareholder of Republic ITS, and the shareholder representative, he executed an "Agreement and Plan of Merger" in which Republic ITS merged with an affiliate of Alinda Capital Partners. Under the terms of the merger agreement, Wade's shares of Republic ITS were "converted into the right to receive" (1) shares of the post-merger Republic ITS entity ("newly issued Republic ITS shares"); (2) cash calculated according to the merger agreement; (3) funds under promissory notes; and (4) earn-in payments. According to Wade and Deborah's 2007 income tax return, Wade received over $13 million in pre-tax cash as a result of the merger.

Wade and Deborah entered into an agreed decree of divorce on May 13, 2008, approximately five months after Wade executed the merger agreement. In his inventory and appraisement, Wade had listed as an asset "Republic ITS Stock" valued at $2,000,000. Deborah filed an identical inventory and appraisement, except that she listed "UNKNOWN" for the value of the "Republic ITS Stock." At her 2009 deposition, Deborah acknowledged that she had relied upon and "accepted" the $2 million valuation that Wade attributed to the "Republic ITS Stock," and she agreed that she could have hired an expert to evaluate the Republic ITS stock but that she never did so. As part of the division of the marital estate, pursuant to section 18.a of the decree, the trial court awarded Wade, among other things, (1) the balance of the funds held by the Bank of the West money market account ending in 6936—$10,104,501—less $7,500,000 to be paid to Deborah, and (2) "The Republic ITS stock, together with

2

all dividends, splits, and other rights and privileges in connection with it." Pursuant to section 18.b of the divorce decree, the trial court awarded Deborah, among other things, $7,500,000 to be paid by Wade from the Bank of the West account ending in 6936. The divorce decree contains a provision that the parties refer to as a "residuary clause":

> IT IS ORDERED AND DECREED that any asset of the parties that was not disclosed or undervalued in the spreadsheet attached to each party's Inventory and Appraisement as Exhibit "A" is awarded to the party not in possession or control of the asset.

No post-judgment motions were filed, and the trial court's plenary power expired on June 12, 2008. *See* Tex. R. Civ. P. 329b(d).

Approximately six months later, in December 2008, Deborah filed a "Motion for Clarification Order and to Enforce Property Division." In her amended motion, Deborah alleged (1) that Wade had failed to disclose or had undervalued on his inventory and appraisement cash and contractual rights consisting of "purchase price consideration" as set forth in the merger agreement; (2) that Wade had failed to disclose or had undervalued on his inventory and appraisement approximately $9,500,000 in cash; (3) that Wade had undervalued on his inventory and appraisement the newly issued Republic ITS shares; and (4) that Wade had failed to disclose on his inventory and appraisement a 401(k) plan held by John Hancock Funds. Deborah identified the "residuary clause" contained in the divorce decree and requested "delivery" of each of the undisclosed and undervalued assets to her.

3

Wade filed a plea to the jurisdiction, arguing that the trial court lacked subject-matter jurisdiction to substantively alter the divorce decree's property divisions. The trial court denied the plea to the jurisdiction and Wade's subsequent motion for reconsideration of the plea to the jurisdiction. The trial court also denied Wade's motion to quash numerous subpoenas and notices of depositions that Deborah filed seeking discovery regarding the alleged undisclosed and undervalued assets. The trial court stayed all matters related to the case pending our resolution of this original proceeding.

## III. STANDARD OF REVIEW

Mandamus relief is proper only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 207 (Tex. 2009) (orig. proceeding). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

## IV. SECTION 18.a V. THE "RESIDUARY CLAUSE"

In his only issue, Wade argues that the divorce decree unambiguously awarded to him all of the alleged undisclosed or undervalued assets of which Deborah complains and, therefore, that Deborah is seeking a post-divorce redivision of previously divided community property, not a clarification and

4

enforcement of the divorce decree. Because the trial court has no subject-matter jurisdiction to alter or redivide the previously divided community property, Wade contends that the trial court clearly abused its discretion by denying his plea to the jurisdiction.

Deborah contends that Wade (1) failed to disclose a promissory note in the amount of approximately $4.3 million and contractual rights to cash payments (one of the payments being approximately $1.1 million) and (2) undervalued the newly issued Republic ITS shares by at least $2,490,000. In response to Wade's argument that she seeks a redivision of previously divided property, Deborah argues that the undisclosed and undervalued assets were never awarded to Wade under section 18.a of the divorce decree but, instead, were awarded to her at the time of the divorce pursuant to the "residuary clause." She advocates the following construction of the divorce decree and "residuary clause":

- •All of the property awards expressly made pursuant to the divorce decree are contingent upon a proper valuation of each asset.

- •If a party failed to disclose or undervalued an asset in his or her inventory and appraisement, then that asset was "concurrently" awarded to the other party pursuant to the "residuary clause" when the divorce decree was executed.

- •But if an asset was both disclosed and properly valued in the party's inventory and appraisement, then the "conditions precedent" contained in the "residuary clause"—undervaluation and nondisclosure—were not triggered, and the asset was not awarded pursuant to the "residuary clause" but pursuant to section 18 of the divorce decree.

Deborah therefore contends that by filing her "Amended Motion for Clarification Order and to Enforce Property Division," she merely seeks (1) to determine whether assets were undisclosed or undervalued and, if so, (2) to enforce the

5

division of undisclosed and undervalued assets that already occurred via the "residuary clause."

It is well settled that a judgment finalizing a divorce and dividing marital property bars relitigation of the property division. *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011). Attempting to obtain an order that alters or modifies a divorce decree's property division is an impermissible collateral attack. *Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009). The legislature even says so in family code section 9.007:

> (a) A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property.
>
> (b) An order under this section that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable.

Tex. Fam. Code Ann. § 9.007(a), (b) (West 2006).

A trial court does, however, retain continuing subject-matter jurisdiction to clarify and to enforce the decree's property division. *Id.* §§ 9.002, 9.008(a) (West 2006); *see also id.* § 9.006(a) (West 2006) (providing that trial court has continuing jurisdiction to "render further orders to enforce the division of property made in the decree of divorce . . . to assist in the implementation of or to clarify the prior order"). But a clarification order cannot be used to make a substantive change in a divorce decree after it becomes final, even if it contains substantive legal error. *See Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003).

6

Further, parties cannot confer or waive jurisdiction by consent or agreement. *Claxton v. (Upper) Lake Fork Water Control*, 220 S.W.3d 537, 541 (Tex. App.—Texarkana 2006, no pet.).

We agree with Wade that section 18.a of the divorce decree expressly and unambiguously awarded all of the alleged undisclosed or undervalued assets to him. The divorce decree awarded Wade the "Republic ITS stock," which included the newly issued Republic ITS shares, and all other "rights and privileges in connection with it." The "rights and privileges in connection" with the "Republic ITS Stock" included the matters set out in section 2.3 of the merger agreement that Wade had the "right to receive," which included the alleged undisclosed or undervalued assets—the promissory note, cash, and newly issued Republic ITS shares. As for the $9,500,000 that Deborah initially complained about in her amended motion, to the extent that she has not abandoned this argument, she agreed in her deposition that the $10 million divided approximately 70/30 in her favor by the divorce decree accounted for those funds. Similarly, regarding the John Hancock 401(k) account, Deborah's attorney conceded at the hearing on the plea to the jurisdiction that it was a non-issue if she was mistaken that an Ameritrade account identified on the inventory and appraisement was the same account as the John Hancock account, which is consistent with Wade's explanation of the Ameritrade account.

But our conclusion that section 18.a awarded all of the alleged undisclosed or undervalued assets to Wade does not resolve the issue here because

7

Deborah contends that the disputed section 18.a asset awards were merely contingently awarded to Wade and "concurrently" awarded to her under the "residuary clause" when Wade failed to disclose or undervalued certain assets. However, under Deborah's construction of the divorce decree, if it is determined that Wade failed to disclose or undervalued a section 18.a asset in his inventory and appraisement and that the asset was "concurrently" awarded to Deborah under the "residuary clause," then the unambiguous section 18.a asset award would be rendered completely meaningless. Thus, a conflict exists between section 18.a and the "residuary clause" when an asset awarded under section 18.a is instead alleged to have been awarded under the "residuary clause."

An agreed divorce decree, such as the one in this case, is a contract subject to the usual rules of contract construction. *See McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984) (op. on reh'g). When interpreting a contract, courts examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex. 1983). If provisions in the contract appear to conflict, they should be harmonized, if possible, to reflect the intentions of the parties. *Id.*

We disagree with Deborah that the unambiguous section 18.a asset awards are contingent upon the "conditions precedent"—nondisclosure and undervaluation—contained in the "residuary clause." Deborah says that "the parties elected to include the Residuary Clause in the Decree in order to provide

8

a 'safety net' in the event either party was less than forthcoming," but examining the entire decree as written, there is no indication that Wade and Deborah intended for the section 18.a asset awards to be contingent upon anything, including the "conditions precedent" of the "residuary clause." As written, the section 18.a asset awards are final. We cannot harmonize section 18.a with the "residuary clause" by construing the asset awards under section 18.a as contingently awarded upon a proper disclosure and valuation of property in the inventory and appraisement.

As far as we can tell, the only other way to possibly harmonize the "residuary clause" with section 18.a is to construe the "residuary clause" as applying to residual assets that were *not* awarded by section 18.a of the divorce decree. But as with Deborah's "contingency" argument, this contention leads to a dead end.

The word "residuary" is derived from the word "residue," which means "something that remains after a part is taken, separated, removed, or designated." *See* Webster's Third New International Dictionary 1932 (3d ed. 2002). Consistent with this meaning, a standard residuary clause contained in a divorce decree provides a remedy for property that was *not* otherwise divided and awarded by the divorce decree. *See, e.g., Buys v. Buys*, 924 S.W.2d 369, 370 (Tex. 1996); *Tharp v. Tharp*, 772 S.W.2d 467, 468–69 (Tex. App.—Dallas 1989, no writ) (discussing residuary clauses examined in other cases). "By its very nature, a residuary clause encompasses those things *not specified* in the

9

decree but included in the community property under the jurisdiction of the court." *See Jacobs v. Cude*, 641 S.W.2d 258, 260 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (emphasis added).

Here, the divorce decree's "residuary clause" purports to devise a remedy for property "that was not *disclosed or undervalued in the spreadsheet* attached to each party's Inventory and Appraisement." [Emphasis added.] This is not a residuary clause as that term is commonly used because in no way does it contemplate a division of property that was *not* otherwise divided by the divorce decree. Instead, according to Deborah's construction, the "residuary clause" operates on an unwritten contingency—idling along and irrelevant when a section 18.a asset was disclosed and properly valued in Wade's inventory and appraisement, but springing into action and "concurrently" awarding that same asset to Deborah if she proves in a post-judgment action that Wade failed to disclose the asset or undervalued it in his inventory and appraisement. There is nothing residual about the "residuary clause."

Deborah directs us to *Noyes v. Noyes* and argues that the decision involves "similarly situated facts [and] provides firm grounds for determining whether a petitioner is seeking 'enforcement' or 'modification' of a previously entered decree." No. 04-08-00627-CV, 2009 WL 2520972, at *3–4 (Tex. App.— San Antonio Aug. 12, 2009, no pet.) (mem. op.). In *Noyes*, the divorce decree awarded Monica $125,000 "due by [George] on the day he closes on the house located at: Lot 265, Unit IV." *Id.* at *2. Monica filed a petition to enforce or clarify

the divorce decree, alleging that George had failed to comply with the decree by not selling the house and paying her $125,000. *Id.* at *2. The trial court granted George's plea to the jurisdiction on the ground that the trial court had no jurisdiction to modify the decree. *Id.* at *2–3. On appeal, Monica argued that the divorce decree required George to sell the house even though the decree did not identify *when* George was required to sell the house. *Id.* at *4. George argued that the decree did not require him to sell the house and that he had to pay Monica $125,000 only "in the event" that he sold the house. *Id.* The court of appeals concluded that the language of the divorce decree as a whole contemplated that George was required to sell the house, that he had to sell the house within a reasonable time, and that the trial court had jurisdiction over Monica's action to enforce the portion of the decree requiring George to sell the house within a reasonable time and pay Monica $125,000. *Id.*

The court of appeals in *Noyes* thus resolved a dispute over the construction of a single provision contained in the divorce decree. Unlike in this case, the court of appeals did not have to resolve a conflict between two provisions of a divorce decree that arguably awarded the same assets to two different people, nor did the court of appeals address a provision worded anything remotely similar to the "residuary clause" at issue in this case. *Noyes* is therefore inapposite.

We are unable to harmonize the "residuary clause" with section 18.a's final asset awards. Consequently, the "residuary clause" irreconcilably conflicts with

11

section 18.a—the alleged undisclosed or undervalued assets could not have been unambiguously awarded to Wade under section 18.a but simultaneously "concurrently" awarded to Deborah by the "residuary clause" if she demonstrates in a post-judgment action that Wade failed to disclose or undervalued those assets in his inventory and appraisement.

When portions of a contract cannot be reconciled, a court may resolve the conflict by striking one of the provisions. *See Ogden v. Dickenson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983); *see also Overton v. Bengel*, 139 S.W.3d 754, 758 (Tex. App.—Texarkana 2004, no pet.); *Lavaca Bay Autoworld, L.L.C. v. Marshall Pontiac Buick Oldsmobile*, 103 S.W.3d 650, 659 (Tex. App.—Corpus Christi 2003, no pet.); *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex. App.—San Antonio 2000, pet. dism'd).

Section 18.a specifically awarded the disputed assets to Wade, and Wade and Deborah positioned section 18.a in the divorce decree ahead of the generally worded "residuary clause." *See Wells Fargo Bank, Minn., N.A. v. N. Cent. Plaza I, L.L.P.*, 194 S.W.3d 723, 726 (Tex. App.—Dallas 2006, pet. denied) (stating that to resolve conflicts in contract provisions, courts turn to rules that specific provisions control over general provisions and provisions stated earlier in an agreement are favored over subsequent provisions). Moreover, the "residuary clause" has the effect of destabilizing section 18.a's as-written final asset awards, contributing to speculation and uncertainty in the finality of the property division. Indeed, Deborah agrees that a section 18.a award is valid and

12

final in the absence of nondisclosure or undervaluation; she apparently has no problem right now with numerous other assets awarded to Wade by section 18.a. But Deborah also maintains that a section 18.a asset is "concurrently" awarded to the other party via the "residuary clause" if nondisclosure and undervaluation are later shown. Her construction of the divorce decree begs the following question: When is an asset ever finally awarded to a party, considering that the same asset could have been "concurrently" awarded to the other party based on an event (a post-judgment action to "enforce" or to "clarify") that has yet to happen? As Wade suggests, Deborah's theory could "potentially result in the re-division and award of all marital assets to Deborah."

Further, for Deborah to prevail upon her theory that she was awarded assets under the "residuary clause," a hearing and proof of an in-fact undervaluation would be required in the trial court. Deborah's contention of undervaluation certainly could be contested by Wade, even under Deborah's interpretation of the "residuary clause." However, the trial court lacks jurisdiction to conduct an evidentiary hearing on the issue of a disputed asset's actual value because the trial court's plenary power expired long ago. *See Pearson*, 332 S.W.3d at 364 ("A final, unambiguous divorce decree that disposes of all marital property bars relitigation."). As alluded to, allowing an asset awarded to one party to be flipped and awarded to the other party in the manner sought by Deborah would mean that there is never a final property division in the case, to the detriment of both parties.

As written, the divorce decree either finally awarded Wade certain assets or it did not. The decree could not have "concurrently" awarded Deborah assets that were expressly, unambiguously, and finally awarded to Wade. For these reasons, the "residuary clause" is ineffective.

The dissent (a) accuses the majority of "discard[ing]" contract principles because we are unable to harmonize the "residuary clause" with section 18.a's final asset awards and (b) claims that the divorce decree can be construed so that effect is given to all of its provisions—the decree apparently "awarded the assets to one person *in the event* of one circumstance that had occurred before signing of the decree or another person *in the event* of the opposite antecedent circumstance." Dissent Op. at 3, 5. [Emphasis added.] We disagree with the dissent's contentions on both counts. We reach our proper conclusion through a precise application of relevant contract-construction principles, and as explained, the divorce decree is not worded in such a way that Wade and Deborah intended for the unambiguous section 18.a asset awards to be contingent upon nondisclosure or undervaluation, nor could the decree as written "concurrently" award Deborah assets that were expressly and unambiguously awarded to Wade. We hold that in the unavoidable confrontation between the "residuary clause" and section 18.a, the "residuary clause" must fail.

Examining the entire divorce decree, the only reasonable construction that can be given to the "residuary clause" as written is that it permits the post-judgment division of previously decree-divided property based upon the trial

14

court's findings regarding the thoroughness of one side's inventory and appraisement. Unquestionably, this violates the family code's express prohibition on amending, modifying, altering, or changing a divorce decree's division of property. *See* Tex. Fam. Code Ann. § 9.007(a), (b). Deborah's suit is an impermissible collateral attack on the divorce decree, and the trial court clearly abused its discretion by denying Wade's plea to the jurisdiction. *See Hagen*, 282 S.W.3d at 902.

Absent extraordinary circumstances, mandamus will not issue unless relator lacks an adequate remedy by appeal. *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 210–11 (Tex. 2004) (citing *Walker*, 827 S.W.2d at 839). This requirement "has no comprehensive definition." *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding). Whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of costs and benefits of interlocutory review. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). As this balance depends heavily on circumstances, it must be guided by analysis of principles rather than simple rules that treat cases as categories. *Id.* An appellate remedy is adequate when any benefits to mandamus review are outweighed by the detriments. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). An appellate court should also consider whether mandamus will allow the court "to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments" and "whether mandamus will spare

15

litigants and the public 'the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.'" *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding) (quoting *Prudential*, 148 S.W.3d at 136). Additionally, mandamus relief is appropriate when a trial court issues an order after its plenary power has expired. *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 68 (Tex. 2008) (orig. proceeding); *see In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (reasoning that mandamus is proper if a trial court issues an order beyond its jurisdiction).

The trial court lacks subject-matter jurisdiction to redivide community property that has already been awarded to Wade. *See* Tex. Fam. Code Ann. § 9.007(a), (b). The trial court issued the February 7, 2012 order denying Wade's motion to reconsider his plea to the jurisdiction and permitting Deborah to conduct discovery in furtherance of her post-judgment action seeking to redivide previously divided property after its plenary power over the divorce decree had expired. *See, e.g., In re Liberty Ins. Corp.*, 321 S.W.3d 630, 640 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (holding that relator had no adequate remedy by appeal to challenge trial court's clear abuse of discretion in denying relator's plea to the jurisdiction for failing to exhaust administrative remedies). Moreover, the benefits to mandamus review are not outweighed by the detriments, if any—mandamus will spare Wade, Deborah, nonparties, and the public both time and money wasted litigating Deborah's post-judgment action

16

seeking relief that the trial court has no subject-matter jurisdiction to award. *See Team Rocket, L.P.*, 256 S.W.3d at 262. We sustain Wade's only issue.

## V. CONCLUSION

We conditionally grant Wade's petition for writ of mandamus and direct the trial court (1) to set aside its February 7, 2012 order denying Wade's motion to reconsider his plea to the jurisdiction and permitting Deborah to conduct discovery in furtherance of her post-judgment action to redivide previously divided property and (2) to enter an order granting Wade's plea to the jurisdiction. A writ will issue only if the trial court fails to do so.

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

LIVINGSTON, C.J., filed a dissenting opinion.

DELIVERED: June 21, 2012

17



## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00138-CV

IN RE W.L.W.                                                    RELATOR

----------

## ORIGINAL PROCEEDING

----------

## DISSENTING OPINION

----------

The majority concludes that the "residuary clause"[1] in the parties' agreed decree of divorce irreconcilably conflicts with an earlier part of the decree that allocates property to relator Wade White. The majority holds, therefore, that the stipulation is ineffective, that implementing it violates section 9.007 of the family

---

[1] The majority correctly explains that section 23 of the parties' agreed divorce decree is not a residuary clause as that term is traditionally understood. *See* Majority Op. at 10; *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (explaining that residuary clauses typically divide property not explicitly mentioned in the decree). We will refer to section 23 as the parties' stipulation for a type of breach of their agreement as described below.

code,[2] and that it must be struck.  Because the parties' bargained-for contractual agreement may be construed in a way that gives effect to all of its provisions, that fulfills the intent of the parties as expressed in the agreement, and that complies with the family code, I respectfully dissent.

Section 5 of the parties' agreed decree states in part, "The Court finds that the parties have entered into a written agreement . . . .  To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract."  The parties' decree, therefore, is a contract that can be enforced through contractual remedies.  *See In re Green*, 221 S.W.3d 645, 648–49 (Tex. 2007) (orig. proceeding); *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984) (op. on reh'g); *see also Spradley v. Hutchison*, 787 S.W.2d 214, 218 (Tex. App.—Fort Worth 1990, writ denied) (explaining that a "property settlement agreement approved by a divorce court and incorporated into a decree of divorce is treated as a contract, and its legal force and meaning are governed by the law of contracts").  In fact, the terms of the decree arose from the parties' mediated settlement agreement, which the parties executed two months before the trial court signed the decree.  The mediated settlement agreement included the stipulation and further included a representation that each party had made a "fair and reasonable disclosure to the other of the property . . . set forth in their respective" inventories.  The decree itself, which each party approved as to both

---

[2]*See* Tex. Fam. Code Ann. § 9.007 (West 2006).

2

form and substance, expressed that each party had read the decree and had "fully" understood its contents.

Furthermore, the law of contracts requires us to

ascertain the true intent of the parties as expressed in the instrument. In doing so, we must examine and consider the entire contract *in an effort to harmonize and give effect to all provisions so that none are rendered meaningless*. Contractual provisions should be considered with reference to the entire instrument; no single provision should control. Words in a contract must carry their ordinary, generally accepted meanings unless the contract itself shows that the terms have been used in a technical or different sense. *In construing a contract, we may not rewrite it nor add to its language.*

*Doe v. Tex. Ass'n of Sch. Bds., Inc.*, 283 S.W.3d 451, 458 (Tex. App.—Fort Worth 2009, pet. denied) (emphasis added) (citations omitted). Also, we must weigh that parties to a contract

are considered masters of their own choices. *They are entitled to select what terms and provisions to include in a contract before executing it.* And, in so choosing, each is entitled to rely upon the words selected to demarcate their respective obligations and rights. In short, the parties strike the deal *they* choose to strike and, thus, voluntarily bind themselves in the manner *they* choose. And, that is why parties are bound by their agreement as written.

*Cross Timbers Oil Co. v. Exxon Corp.,* 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.) (emphasis added).

The majority's opinion discards these principles. The plain meaning of the stipulation that the parties chose is that "*any* asset" of the parties that was "not disclosed or undervalued" in the parties' inventories is awarded "to the party not in possession or control of the asset." [Emphasis added.] Because the items described in section 18.a of the agreement, under the heading "Property to

3

WADE LLOYD WHITE," are unquestionably assets of the parties, they must be subject to the requirements of the parties' clear stipulation.

It is true that section 18.a states that the items contained within the section are awarded to Wade as his "sole and separate property" and that Deborah is "divested of all right, title, interest, and claim in and to that property." In a normal case—one that does not have a clause with the language of the stipulation in this case—it would be clear that the property in section 18.a would belong to Wade. But our task requires us to construe and give effect to the *whole* contract, not just section 18.a. *See Doe*, 283 S.W.3d at 458; *see also In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011) (orig. proceeding) ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.").

We can give effect to the entire contract so that we render no provision meaningless. Harmonizing section 18.a with the stipulation, the parties' contract, as of the date that the contract was signed, made the items in section 18.a (including the Republic ITS stock)[3] Wade's separate property forever, beyond being subjected to any claim by Deborah, as long as he had properly disclosed and had properly valued those items through his inventory that he submitted to Deborah before signing the contract. But if, before signing the contract, he had not properly disclosed or had not correctly valued the items listed in section 18.a that he possessed or controlled, the stipulation, as of the date the contract was

---

[3]Deborah alleges that Wade "grossly undervalued" this stock.

4

signed, awarded those items to Deborah.[4]  Thus, contrary to the majority's reasoning, section 18.a is not rendered "completely meaningless" through the implementation of the stipulation because section 18.a granted items to Wade as his separate property as long as he had correctly valued those items.  *See* Majority Op. at 8.  The decree did not award the "same assets to two different people," *see* Majority Op. at 11, but it instead awarded the assets to one person in the event of one circumstance that had occurred before signing of the decree or the other person in the event of the opposite antecedent circumstance.  We agree with Deborah, therefore, that section 18.a and the stipulation complement each other.

When the trial court's decree and the parties' contract are properly construed this way,[5] it is evident that Deborah, through her motion to enforce the property division, has not asked the trial court to "amend, modify, or alter" the trial court's original division of the property in its decree, which would be

---

[4]The stipulation states, "IT IS ORDERED . . . that any asset of the parties that was not disclosed or undervalued . . . *is awarded* to the party not in possession or control of the asset."

[5]I believe that this is the proper construction of how section 18.a can and should be harmonized with the stipulation.  At least, however, reasonable minds could disagree as to how these provisions affect each other.  In that event, the parties' contract would be ambiguous, the trial court would have jurisdiction to clarify it, and the parties could offer parol evidence to support their respective interpretations of the contract that they made.  *See* Tex. Fam. Code Ann. §§ 9.002, .006 (West 2006); *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 179 (Tex. App.—Fort Worth 2012, no pet.); *Murray v. Murray*, 276 S.W.3d 138, 144 (Tex. App.—Fort Worth 2008, pet. dism'd) ("[A] court that renders a divorce decree retains continuing subject-matter jurisdiction to clarify . . . the decree's property division.").

5

impermissible. *See* Tex. Fam. Code Ann. § 9.007(a); *Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009) ("Attempting to obtain an order that alters or modifies a divorce decree's property division is an impermissible collateral attack."). Rather, by alleging that Wade undervalued property, Deborah is asking the trial court to implement the stipulation that resulted from the parties' bargain and to enforce her ownership of the property subject to the stipulation as of the date of the decree. This is permissible.[6] *See* Tex. Fam. Code Ann. §§ 9.002, .006–.007; *see also Spradley*, 787 S.W.2d at 218 (stating that a trial court has inherent power to clarify or enforce its decree).

I believe that the majority's disposition is based on its conclusion that Deborah is impermissibly seeking to amend a provision of the divorce decree. But it is actually the majority's opinion that makes a "substantive change" to the decree and that alters the expressed intentions of the parties and of the trial court concerning the distribution of the parties' assets. *See* Majority Op. at 6–7; *Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003).

---

[6]The majority cites *Pearson*, 332 S.W.3d at 363, as authority for its statement that the trial court could not hold an evidentiary hearing on the issue of an asset's value in an enforcement proceeding under sections 9.002 and 9.006. *See* Majority Op. at 13. The statute concerning enforcement proceedings does not preclude the presentation of new evidence. *See* Tex. Fam. Code Ann. § 9.001(b)–(c) (West 2006) (explaining that suits to enforce are governed by the rules of civil procedure and shall proceed as in civil cases generally); *In re Kalathil*, No. 14-10-00933-CV, 2010 WL 3872083, at *2 (Tex. App.—Houston [14th Dist.] Oct. 5, 2010, orig. proceeding) (mem. op.) (stating that a party is entitled to pursue discovery in a section 9.006 proceeding).

For these reasons, I would hold that the trial court did not abuse its discretion by denying Wade's plea to the jurisdiction. I respectfully dissent to the majority's conditional grant of Wade's petition for writ of mandamus.

TERRIE LIVINGSTON
CHIEF JUSTICE

DELIVERED: June 21, 2012