**John Harold OVERTON and Diana Jean Overton, Appellants,**

v.

**Juanita BENGEL, Independent Executrix of the Estate of Delbert Messner, Deceased, and Cherokee Water Company, Appellees.**

No. 06–03–00165–CV.

Court of Appeals of Texas, Texarkana.

Submitted June 9, 2004.

Decided July 2, 2004.

Kathryn B. Moon, R. Daryll Bennett, Bennett Law Office, Longview, for appellants.

Gary Shaver, Boon, Shaver, Echols & Coleman, PLLC, Longview, for appellee Juanita Bengel, Ind. Executor.

H.P. Smead Jr., Smead, Anderson & Dunn, Longview, for appellee Cherokee Water Co.

Before MORRISS, C.J., ROSS and CARTER, JJ.

Opinion by Justice ROSS.

This appeal is from a judgment that decided whether an estate had the right to sell property of the decedent, Delbert Messner, to Cherokee Water Company, or if it had to honor an option to purchase belonging to John Harold Overton. Juanita Bengel, as independent executor of Delbert's estate, filed suit against Overton and his wife, Diana Jean, and Cherokee asking the court to declare the rights of the parties under the competing agreements.

The Overtons filed a cross-claim against Cherokee claiming that, by entering an agreement to purchase the property from the estate, Cherokee had tortiously interfered with their pre-existing contract. After a bench trial, the court found that the estate's contract to sell the property to Cherokee was enforceable and that the Overtons' contract was not. The court also rendered judgment in favor of Cherokee on the Overtons' tortious interference claim.

In four issues, the Overtons challenge the trial court's findings (1) that the "First Right of Refusal" did not grant the Overtons a preferential right to purchase the property for a fixed price; (2) that the termination of the "First Right of Refusal" terminated the Overtons' rights; (3) that the Overtons did not timely exercise the option to purchase the property the subject of the suit; and (4) that there was insufficient evidence to support a tortious interference with a contract claim against Cherokee.

## I. Standard of Review

Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). We review its findings for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence to support a jury's answer to a jury question. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994).

In determining a no-evidence issue, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001); *Cont'l Coffee Prods.*

*Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex. 1996). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cazarez,* 937 S.W.2d at 450. When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex. 1998). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.; Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

## II. *Background*

The record shows that Delbert, on behalf of the Messner Family Trust, which held title to the property, and John Overton signed a document entitled "First Right of Refusal." This document gave John Overton thirty days after receiving written notice of the death of the survivor of Delbert or Barbara Messner to purchase two tracts of land at a set price. Less than a year later, Delbert signed a document entitled "Termination of First Right of Refusal," but failed to give a copy of this termination to the Overtons. Delbert and Barbara died, and Bengel, the executor of the estate of the last to die, signed a contract agreeing to sell the land to Cherokee for more money ($300,000.00 versus $250,000.00). John Overton then tried to enforce the "First Right of Refusal" agreement, but Cherokee refused to release the estate from its contract.

After a bench trial, the trial court found, inter alia: (1) that the document entitled "First Right of Refusal" did not grant John Overton a preferential right to purchase the property; (2) that Delbert terminated the "First Right of Refusal," which terminated John Overton's rights, if any, under that document; (3) that John Overton received a letter from Carolyn Matter in March 2002, informing him of Delbert's death; and (4) that John Overton failed to prove any cause of action against Cherokee for tortious interference with John Overton's contract to purchase the property.

## III. *Right of First Refusal or Option to Purchase*

 We first look at the type of contract at issue. The document is titled a "First Right of Refusal." A "right of first refusal" is a contract granting a party the first right to purchase the subject property for the same amount offered by a bona fide purchaser. *Tenneco, Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 644 (Tex.1996). The trial court found the document at issue to be a contract granting John Overton an *option* to purchase the property. The document purports to grant John Overton a right to purchase property for a fixed price within a set time period of thirty days. This is the very nature of an option contract,[1] and the court correctly so defined this document.

## IV. *Enforceability*

The next question is whether the option to purchase was enforceable. The court concluded it was not. We agree.

### 1. *Statute of Frauds*

 The option contract stated that a sales contract was attached. The evidence showed that none was. The absence of this attachment puts the option contract at odds with the statute of frauds. *See* Tex.

---

1. *See Markert v. Williams,* 874 S.W.2d 353, 354, 356–57 (Tex.App.-Houston [1st Dist.] 1994, writ denied); *Riley v. Campeau Homes (Texas), Inc.,* 808 S.W.2d 184, 187 (Tex.App.-Houston [14th Dist.] 1991, writ dism'd by agr.).

Bus. & Com.Code Ann. § 26.01 (Vernon 2002). This statute requires a contract for the sale of real estate, or a memorandum of such agreement, to be (1) in writing, and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for such person. *EP Operating Co. v. MJC Energy Co.*, 883 S.W.2d 263, 266–67 (Tex. App.-Corpus Christi 1994, writ denied).

■■■ We first point out that the sales contract the Overtons cite as the appropriate one not only was not attached to the option agreement, but was never signed by either the Messners individually or in their status as holders of the revocable trust. Further, with respect to the agreements defined within a memorandum, such memorandum must be complete within itself in every material detail, and contain all of the essential elements of the agreements, so that the agreements can be ascertained from the writings without resorting to oral testimony. *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex.1978). This requirement may be satisfied with two documents if the second document refers to the first. *Crowder v. Tri-C Res., Inc.*, 821 S.W.2d 393, 396 (Tex.App.-Houston [1st Dist.] 1991, no writ). However, the reference to the first document contained in the second document must give sufficient details of the terms of the agreement embraced in the first document to satisfy the statute of frauds. *See EP Operating Co.*, 883 S.W.2d at 267. A memorandum like the present option contract, which merely alludes to the existence of a separate contract but does not give sufficient details of the terms of that contract, is insufficient to satisfy the statute of frauds. *Id.*

2. *Irreconcilable Conflicts*

■■■ When the provisions of a contract appear to conflict, they should be harmonized if possible to reflect the intentions of the parties. *Harris v. Rowe*, 593 S.W.2d 303 (Tex.1979). Generally, the parties to a contract intend every clause to have some effect and the court will not strike down any portion of the contract unless there is an irreconcilable conflict. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex.1983).

The sales contract on which the Overtons rely is inconsistent with the option to purchase because it provided a life estate in the property for the Messners, while the option only became operative following the death of the survivor. Also, the unsigned sales contract specifies a closing date seventy-five days before the date the option contract was executed. Thus, the sale could not have been closed and completed in the manner set out by the contract.

In addition, the "First Right of Refusal" document internally refers to a special warranty deed in which the Messners transferred ownership of the property to the trust, as providing a description of the property covered by the option contract. The Overtons claim that lot NQ–10 is included within the option, but lot NQ–10 is not covered by the special warranty deed.

The trial court correctly concluded that the option was unenforceable, and the Overtons' first point of error is overruled.

V. *Termination of the "First Right of Refusal"*

■■■ The Overtons also argue the trial court erred in finding that a document entitled "Termination of First Right of Refusal" signed by Delbert terminated the Overtons' rights. The uncontroverted evidence was that consideration for the contract changed hands, thus binding both parties to the transaction. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408–09 (Tex.1997). Once consideration passes, an option becomes irrevocable. *Riley v. Campeau Homes (Texas), Inc.*, 808 S.W.2d

184, 188 (Tex.App.-Houston [14th Dist.] 1991, writ dism'd by agr.). However, because we have held the option was unenforceable, we overrule this issue as moot.

VI. *Timeliness*

█ Even if the agreement was enforceable as an option to purchase between these parties, the option had to be exercised within thirty days after John Overton was informed in writing of the death of the survivor. He received a letter in late March 2002, asking him to waive his "First Right of Refusal." John Overton admitted he found out about Delbert's death because of that letter. The trial court found that the letter served to inform John Overton that Delbert had died. Counsel argues that the court should not have considered that early notification, but only a letter from the estate for which John Overton signed August 2, 2002. John Overton, by and through his counsel, attempted to exercise the option August 19.

John Overton's own testimony is inconsistent. He first testified that he received a letter from a real estate agent asking him to waive the right of first refusal and that he went to the newspaper and found an obituary notice of Delbert's death. He was then asked if he recalled anything about that letter besides the fact it told him "that Mr. Messiner [sic] was dead and asking you to waive first right of refusal." He answered, "No." There is therefore evidence John Overton was informed by letter in March 2002 about the death of the surviving Messner. To contradict this testimony, the Overtons point to John Overton's later testimony in which he stated he only received one notification of Delbert's death—the certified letter sent in July from the attorney for the estate, and denying he had received notice in March.

The trial court found that adequate written notification was provided in March, and thus the attempt to exercise the option was untimely. The contrary evidence is not so overwhelming as to allow us to take the case from the fact-finder and render a different verdict. The finding of fact is supported by the evidence. The contention of error is overruled.

VII. *Tortious Interference*

█ Because our resolution of this appeal affirms the conclusion that the "First Right of Refusal" was not enforceable, we necessarily conclude the trial court correctly determined Cherokee did not tortiously interfere with any existing contractual relationship.

VIII. *Conclusion*

We affirm the judgment.