

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00048-CV

_____

HERITAGE CONSTRUCTORS, INC., Appellant

V.

CHRIETZBERG ELECTRIC, INC., AND RICHARD MARC CHRIETZBERG, Appellees

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 12C0591-202

Before Morriss, C.J., Moseley and Carter*, JJ.
Memorandum Opinion by Chief Justice Morriss

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

# MEMORANDUM OPINION

The deadline was looming for aspiring prime contractors to submit their bids to TexAmericas Center to build a wastewater treatment plant on its property in Bowie County. The subcontract bid of Chrietzberg Electric, Inc. (Electric) submitted at the last minute by Richard Marc Chrietzberg (Chrietzberg) to aspiring prime contractor Heritage Constructors, Inc. (Heritage), for the electrical portion of that treatment plant never once mentioned Heritage's name. After Heritage was named the prime contractor for the project, Electric withdrew its subcontract bid, requiring Heritage to use the next lowest subcontract bidder and resulting in this lawsuit, which was submitted to a Bowie County jury. Few of the parties were entirely happy with the result of that trial.[1]

On appeal,[2] we affirm the take-nothing judgment favoring Chrietzberg and the denial of Heritage's claims for negligent misrepresentation, but reverse the judgment favoring Heritage and render a take-nothing judgment, because (1) the statute of frauds bars Heritage's claim for breach of contract, (2) there is no evidence of damages recoverable based on promissory estoppel, (3) denying Heritage's claims for negligent misrepresentation was proper, and (4) Heritage's recovery of attorney fees also fails.

---

[1]Based on a jury verdict and its own findings, the trial court entered judgment in favor of Heritage against Electric in the amount of $50,000.00, attorney fees through trial of $58,041.00, and costs and interest. Earlier, the trial court had entered judgment in favor of Chrietzberg, individually, on all claims asserted against him, also based on the jury's verdict.

[2]Heritage's appeal challenges the sufficiency of the evidence supporting the amount of damages and attorney fees found and awarded and the judgment in favor of Chrietzberg. Electric challenges the legal sufficiency of the evidence supporting the award of damages based on contract and promissory estoppel and the award of attorney fees in favor of Heritage.

Heritage is a general contractor that specializes in the construction of water and wastewater treatment plants. In October 2011, Heritage was preparing a bid in an effort to become general contractor for the TexAmericas Center-East wastewater treatment plant improvement project (the Project) in Bowie County, Texas. The Project was contemplated to take nineteen months, with a projected start date of December 31, 2011, and a completion date of July 31, 2013. Although Heritage would perform eighty to eighty-five percent of the Project itself, certain aspects of the Project, including the electrical work, necessitated the use of subcontractors. TexAmericas required all bids from potential general contractors to be submitted no later than 2:00 p.m. on October 20, 2011. On that day, Carl Smith, Heritage's vice president, was in his office receiving last minute bids and revised bids from suppliers and subcontractors. The pricing was fluctuating, and Heritage's initial bid calculation was revised by as much as one million dollars within the last thirty minutes before the deadline. Meanwhile, Dennis Smith, Heritage's president, was in the TexAmericas parking lot waiting for Carl to telephone him with the final bid numbers so he could hand deliver the bid by the deadline. Earlier that day, Carl had received a telephone bid from Electrique Corporation in the amount of $886,400.00 to perform the electrical work on the Project. Ten minutes before the deadline, Carl received a faxed bid from Electric, quoting $704,857.00[3] to perform the electrical work on the Project, but excluding any and all concrete work. After reviewing the bid, Carl had his assistant call Electric at 1:53 p.m. to confirm that the bid included all of the electric work in the Project plans. After confirming the bid, Carl reviewed Electric's bid again and realized the bid did not include money

---

[3]Electric's base bid was $707,857.00, but provided for a deduction from the base bid of $3,000.00.

to bond the job. He then had his assistant call Electric again at 1:59 p.m., to obtain its bond rates. Once he was confident that Electric could bond his bid, Carl decided to use Electric's bid in Heritage's final bid to TexAmericas. He conveyed the final calculations to Dennis so Dennis could finalize the bid and submit it to TexAmericas.[4]

Shortly thereafter, the project engineer notified Carl that Heritage was the low bidder for the Project. He also told him the Project was above the owner's budget and that he wanted to work with Heritage on value engineering[5] ideas to help get the project cost down. Carl then called Chrietzberg to let him know that Heritage was the low bidder and that, if Heritage got the job, so would Electric. He also asked Chrietzberg to provide him with some value engineering ideas on the electrical work. Heritage worked with Electric over the next week on value engineering and also asked Electric to give it a price for the duct bank concrete work, which had been excluded from Electric's bid. Electric gave Heritage a quote of $68,575.00 to perform all duct bank concrete work, including all labor and materials.[6] Heritage thought this was excessive and decided to do the concrete work itself. On January 24, 2012, the TexAmericas board of directors approved awarding the Project to Heritage, and Heritage emailed Electric to notify it of the award. In the email, Heritage stated, "Look forward to working with you on this project." Electric responded, "Thank you, Carl. Same here."

---

[4]The second page of Heritage's final bid for item 1 ("For construction of all improvements at the TexAmericas Center East Wastewater Treatment Plant site except as listed below, complete as shown on the Plans and specified herein (except for all seal slabs and sidewalks shown) for a total lump sum amount of") shows a strike-through change from "$5,636,500" to "5,536,500." There was no testimony explaining this strike-through change.

[5]Value engineering attempts to provide the same functionality at a lower cost.

[6]Electrique Corporation's bid included performing all concrete work.

On February 3, after receiving an executed contract from TexAmericas, Heritage sent Electric a proposed subcontract for the electrical work on the Project. The subcontract terms did not exclude the duct bank concrete work from the description of the work required of Electric and did not include an amount to pay for the duct bank concrete work or to reimburse Electric for its bond.[7] When Carl called Chrietzberg to let him know the subcontract was on its way, Chrietzberg asked Carl about the difference between Electric's bid and the next lowest bid. Carl compared the two bids, adjusted for the duct bank concrete work, called Chrietzberg back, and told him the difference was about $90,000.00–100,000.00. On February 7, Electric notified Heritage that it was withdrawing its bid. That afternoon, Dennis called Electric to ask it to reconsider, which Electric refused to do. Heritage then contacted Electrique Corporation, the next lowest electrical bidder, and entered into a subcontract on March 2 with it to perform all of the electrical work on the Project for $886,400.00. Electrique Corporation's acceptance of the subcontract was conditioned on Heritage accepting certain revisions to the subcontract.

Heritage filed suit against Electric for breach of contract, promissory estoppel, and negligent misrepresentation. It also sued Chrietzberg, individually, for negligent misrepresentation and negligence. The jury found in favor of Heritage and against Electric on the breach of contract, promissory estoppel, and negligent misrepresentation claims and assessed damages of $50,000.00 for breach of contract/promissory estoppel[8] and no damages for

---

[7]Carl testified that he told Chrietzberg in a telephone conversation that he would issue a change order to reimburse Electric for the bond when it received an invoice and that they "could either handle the concrete duct bank in the change order or [Carl] could write a modification to one of the paragraphs in the subcontract agreement." Chrietzberg denied that Carl told him he would either modify the subcontract or address it in a change order.

[8]A single damage issue was presented for any liability found for breach of contract or promissory estoppel.

negligent misrepresentation. The jury found no negligent misrepresentation or negligence by Chrietzberg, individually. By agreement of the parties, the issue of attorney fees was submitted to the trial court in a separate hearing. Heritage filed a motion to disregard the jury's answers to questions 4 (the contract/promissory estoppel damage question) and 7 (the negligent misrepresentation damage question), asserting it had proven exact damages of $177,525.10 for breach of contract/promissory estoppel and negligent misrepresentation and asking the trial court to award the same. Electric filed a motion for judgment *non obstante veridicto* asserting that there was no evidence of a contract between Heritage and Electric and that the statute of frauds barred any recovery by Heritage. The trial court signed and entered a judgment in favor of Chrietzberg on Heritage's claims on August 13, 2013. On February 11, 2014, the trial court signed an order awarding Heritage attorney fees in the amount of $58,041.00—twenty-eight percent of the attorney fees it requested, based on the jury awarding Heritage twenty-eight percent of the damages it requested. The trial court also denied Electric's motion for judgment notwithstanding the verdict and Heritage's motion to disregard. On February 26, 2014, a final judgment was signed by the trial court, awarding Heritage judgment against Electric for $50,000.00 in damages, together with $58,041.00 in attorney fees, conditional appellate attorney fees, costs of court, and interest.

On appeal, Heritage challenges the legal and factual sufficiency of evidence supporting the amount of damages; the legal sufficiency of evidence supporting the amount of attorney fees; the legal sufficiency of evidence supporting the jury's finding of no damages for negligent misrepresentation; and the legal sufficiency of evidence supporting the jury finding that

6

Chrietzberg has no liability for negligent misrepresentation.[9] In its cross-appeal, Electric asserts that all of Heritage's causes of action are barred by the statute of frauds, challenges the legal sufficiency of evidence supporting any damages for breach of contract or promissory estoppel, and asserts that the trial court erred in awarding attorney fees as a matter of law.

*(1)    The Statute of Frauds Bars Heritage's Claim for Breach of Contract*

We first address Electric's assertion that the statute of frauds barred Heritage's claim for breach of contract.[10] Electric argues that the alleged agreement was within the statute of frauds because it could not be performed within one year of its making and that there was not a written agreement or memorandum sufficient to satisfy the statute. Heritage argues that the statute of frauds does not apply since the agreement could be performed within one year. In the alternative, Heritage argues that a sufficient written agreement signed by Electric satisfied the requirements of the statute. Because we find that the alleged agreement was within the statute of frauds and there was not a writing that satisfied the statute of frauds, we sustain Electric's point of error.

"Whether an agreement falls within the statute of frauds is a question of law." *Sterrett v. Jacobs*, 118 S.W.3d 877, 879 (Tex. App.—Texarkana 2003, pet. denied); *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 594 (Tex. App.—Houston [14th Dist.] 2000, no pet.). "A question of law is subject to a de novo review." *Dixon v. Amoco Prods. Co.*, 150 S.W.3d 191, 194 (Tex. App.—

---

[9]Heritage does not appeal the jury finding Chrietzberg not liable for negligence or the portion of the judgment based on that finding.

[10]Electric states that the trial court failed to submit its requested jury questions, since fact questions remained as to the applicability of the statute of frauds. Because we find that the alleged agreement was within the statute of frauds, we do not address this alternative issue.

7

Tyler 2004, pet. denied). The statute of frauds applies to "an agreement which is not to be performed within one year from the date of making the agreement." TEX. BUS. & COM. CODE ANN. § 26.01(b)(6) (West 2009); *Dobson v. Metro Label Corp.*, 786 S.W.2d 63, 66 (Tex. App.—Dallas 1990, no writ). When an agreement is subject to the statute of frauds, it is not enforceable unless the "agreement, or a memorandum of it is (1) in writing . . . and signed by the party to be charged . . . or by someone lawfully authorized to sign for him." TEX. BUS. & COM. CODE ANN. § 26.01(a)(1), (2) (West 2009). Further, the "statute requires that . . . there must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978). If more than one writing exists, it is not sufficient that they refer to the same transaction, there must be an express reference to the agreement in the signed writing that incorporates the unsigned writing. *Owen v. Hendricks*, 433 S.W.2d 164, 167 (Tex. 1968); *Overton v. Bengel*, 139 S.W.3d 754, 758 (Tex. App.—Texarkana 2004, no pet.) Further, "the reference to the first document contained in the second document must give sufficient details of the terms of the agreement embraced in the first document to satisfy the statute of frauds." *Overton*, 139 S.W.3d at 758. A writing that merely alludes to the existence of another writing but does not give sufficient details to determine the terms of that writing is insufficient to satisfy the statute of frauds. *Id.* Whether the writings are sufficient to satisfy the statute of frauds is a question of law. *See Bright & Co. v. Holbein Family Mineral Trust*, 995 S.W.2d 742 (Tex. App.—San Antonio 1999, pet. denied).

8

*(a)     The Agreement Is Subject to the Statute of Frauds*

First, we must determine whether the alleged agreement is subject to the statute.  The general rule is that, if the parties do not fix the time of performance and the agreement itself does not indicate that it cannot be performed within one year, the agreement is not subject to the statute.  *Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982).  However, where the agreement by its terms or by the nature of the required acts shows it cannot be completed within one year, it comes within the statute and must therefore be in writing.  *Id.* (citing *Hall v. Hall*, 308 S.W.2d 12 (Tex. 1957)); *Metromarketing Servs., Inc. v. HTT Headwear, Ltd.*, 15 S.W.3d 190, 195 (Tex. App.—Dallas 2000, no pet.).  If the agreement fixes a definite period longer than a year during which performance shall continue, it indicates that the parties did not contemplate earlier performance.  *Walker v. Tafralian*, 107 S.W.3d 665, 669 (Tex. App.—Fort Worth 2003, pet. denied); *Mann v. NCNB Tex. Nat'l Bank*, 854 S.W.2d 664, 668 (Tex. App.—Dallas 1992, no writ).  Further, if the agreement explicitly fixes a time for performance greater than one year, the mere possibility that it may be performed within one year is not enough to satisfy the statute.  *Walker*, 107 S.W.3d at 669; *SBC Operations, Inc. v. Bus. Equation, Inc.*, 75 S.W.3d 462, 466 (Tex. App.—San Antonio 2001, pet. denied); *Mann*, 854 S.W.2d at 668.

At trial, Heritage argued that the agreement between Heritage and Electric was made on the day Electric submitted its written bid to Heritage.  This was supported by the testimony of Carl.  Regarding an email sent by Electric in February 2012 in which Electric asked to withdraw, Carl testified,

> Q     Given your dealings with Mr. Chrietzberg . . . up to that point in time, what was he asking Heritage for him to be able to withdraw from?

9

> **A** The agreement we made on October 20th (2011) when he bid the job.
>
> **Q** And again, what was that agreement?
>
> **A** To do the electrical, instrumentation, and generator for the wastewater treatment plant at TexAmericas for $704,857.

Further, Heritage argues in its brief that Electric's written bid sent to it October 20, 2011, satisfies the requirements of the statute of frauds. Therefore, we must determine whether the evidence conclusively shows the parties contemplated that the work was not to be completed within one year of October 20, 2011.

Heritage also asserts that Electric's bid "incorporate[es] the detailed plans and specifications, including six addenda, of the TexAmericas project, *as well as the anticipated time frame of the project*."[11] (Emphasis added). Heritage offered into evidence its completed bid proposal. Carl testified that the form on which the proposal was submitted is a part of the TexAmericas specifications for the Project. Thus, the blank form of this proposal would be part of the TexAmericas plans and specifications that Heritage contends was incorporated by Electric's bid. This proposal shows that the Project had a substantial completion date of May 31, 2013, and a final completion date of July 31, 2013, based on a start date of December 31, 2011. Thus, the explicit terms of the alleged agreement show that the parties contemplated that the work would not be completed within one year.[12]

---

[11]Indeed, for the Electric bid to even arguably be a memorandum of the agreement, it would necessarily have to incorporate the TexAmericas plans and specifications to supply essential terms of the agreement. Since we find that the agreement does not satisfy the statute of frauds, we need not decide whether the Electric bid did, in fact, incorporate these plans and specifications.

In addition, Carl testified as follows regarding the duration of performance under Heritage's agreement with Electric:

> Q    Now earlier you talked about and testified to the anticipated length of the project being in the project plans and specs.  So with that testimony in mind, when [Electric] is referencing the plans and specs and the six addenda, what is that communicating to you about [its] quote and the scope or time duration of the project?
>
> A    Well, [it's] bidding on the electrical portion of the same project that we're bidding on, and that is a 19-month long wastewater treatment plant for TexAmericas.
>
> Q    Well, in your mind, is [it] committing to Heritage in this quote that [it] will have personnel and have materials for a 19-month duration on the project?
>
> A    Absolutely.[13]
>
> . . . .
>
> Q    [Mr. Lewis]    When you receive this kind of quote and specifications list with a 19-month duration of the project, and the quote lists and identifies the project plans and specs, what is that telling you about the commitment from the electrical subcontractor on the duration of the project?
>
> . . . .
>
> A    Yes, sir.  We were bidding on 19-month wastewater treatment plant for TexAmericas.  This quote is the electrical portion of that 19 month long project.

Chrietzberg also testified that it was a nineteen-month project with a completion date of July 31, 2013.  He denied ever seeing anything indicating the parties could expect the project to be

---

[12]Although Heritage argues that the agreement may not have been finalized until as late as January 24, 2012, the fixed time for performance still exceeds one year.

[13]Although Electric objected to this question after it had been answered and the trial court sustained the objection, Electric did not request that it be stricken or that the jury be instructed to ignore it, and the trial court did not do so.

completed in less than a year. Further, when Heritage presented its proposed subcontract to Electric on February 3, 2012, the subcontract contained a completion date of May 31, 2013. Thus, whether the completion date is May 31, 2013, or July 31, 2013, the undisputed documentary and testimonial evidence is that, at the time of making the agreement, the parties contemplated that the duration of performance under the agreement would take more than one year.

Heritage asserts that Electric had the burden to conclusively establish that the agreement could not be performed within one year and points to the testimony of Mike Lilly, president of Electrique Corporation, as evidence that the electrical work could have been conceivably performed in less than one year. However, the cases cited by Heritage involved agreements where the performance was of indefinite duration, without an explicit time of performance. *See Niday*, 643 S.W.2d at 920; *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775 (Tex. 1974); *Monasco v. Gilmer Boating & Fishing Club*, 339 S.W.3d 828, 839 (Tex. App.—Texarkana 2011, no pet.). The requirement of conclusively showing that the agreement could not be performed within one year applies in those cases where the time for performance is indefinite. *Niday*, 643 S.W.2d at 920. However, a different rule applies in those cases, as here, where the agreement explicitly states a time for performance greater than one year. In those cases, the mere possibility that the agreement could be performed within one year is not enough to satisfy the

statute.[14] *Walker*, 107 S.W.3d at 669; *SBC Operations, Inc.*, 75 S.W.3d at 466; *Mann*, 854 S.W.2d at 668.

(b)     *The Agreement Is Unenforceable under the Statute of Frauds*

Since the agreement is subject to the statute of frauds, we must now determine whether the written agreement or memorandum is sufficient to satisfy the statute. To satisfy the statute, the writings must be complete in every material detail and contain all of the essential elements of the agreement so that the contract can be ascertained from the writings without resorting to oral testimony. *Cohen*, 565 S.W.2d at 232. One of the essential elements of the agreement is that it identify the parties to the agreement. *Id.* at 232; *Dobson*, 786 S.W.2d at 65. In *Cohen*, the administrator of the estate of Byron M. McKnight (Cohen) sued Jerry, Gene and Alma McCutchins in a third-party action to recover certain drilling costs due pursuant to two written agreements allegedly entered into by the McCutchinses with McKnight. Before his death, McKnight had entered into an agreement with American Quasar Petroleum Co. to participate in the drilling and completion of an exploratory well in Ward County, Texas. Although drilled and completed, production of the well was not sufficient to pay the costs. After McKnight's death, American Quasar sued Cohen, as administrator of McKnight's estate, to recover McKnight's share of the drilling costs. Cohen, in turn, filed a third-party action against the McCutchinses seeking to recover their pro rata shares of the costs owed by them pursuant to two written agreements they had allegedly entered into with McKnight. Under these agreements, McKnight allegedly assigned portions of his working interest to each of the McCutchinses. Although the

---

[14]Although not relevant to our inquiry, we note that Lilly also testified that Electrique Corporation was still performing electrical work on the Project at the time of trial and anticipated being on the job through July 2013.

13

letter agreements were signed by each McCutchins, they were not signed by McKnight and did not identify him in any way.[15] *Cohen*, 565 S.W.2d at 231. Under these facts, the Supreme Court held that, since there was no writing that identified McKnight as a party to the letter agreements, the memoranda were insufficient to satisfy the statute of frauds. *Id.* at 232; *see also Dobson*, 786 S.W.2d at 66 (memorandum that requires oral testimony to supply identity of parties insufficient to satisfy statute of frauds).

This case presents a similar scenario. Heritage points to two writings as supplying the essential terms of the agreement. First, it points to Electric's written bid. Electric's bid is written on the letterhead of Chrietzberg Electric, Inc., and, after reciting that it is regulated by the Texas Department of Licensing and Regulation and giving that department's contact information, reads as follows:

10/20/2011

East WWTP TexAmerica

Gentlemen,

> Here is our quote for the above project. It includes, but is not limited to, the following:
>
> 1.  All electrical as specified on the plans and specs with the following clarifications:
> 2.  All SCADA work as specified by the plans and specs.
> 3.  The generator, ATS, fuel, and related appurtenances.
> 4.  Reznor Unit heater.
> 5.  I am in receipt of 6 addenda.
> 6.  All labor, materials, no tax, and all else to complete the job.

---

[15]The full texts of the letters are set out in the Waco court of appeals opinion. *Cohen v. McCutchin*, 554 S.W.2d 844, 846–47 (Tex. Civ. App.—Waco 1977), *aff'd*, 565 S.W.2d 230 (Tex. 1978).

EXCLUSIONS:

1.        Robo-control actuators.
2.        Motorized dampers.
3.        Wall exhaust fans.
4.        Any and all concrete or cutting and patching of the same.
5.        Pump control panels.
6.        Utility company charges.
7.        Money to bond the job.
8.        Sales tax.

Base bid is $707,857

Deletion for Bid Item #9 is $3,000 to be deducted from the base bid.

Please call Gerald Reed with bid related questions at 903-567-4566 or 903-386-6164.

Thank you,

Marc Chrietzberg

/s/ Marc Chrietzberg[16]

Nowhere in the written bid is Heritage mentioned or identified as the recipient of the bid. Oral testimony was necessary to identify Heritage as the recipient of the bid. Heritage also asserts that the TexAmericas plans and specifications should be considered part of the agreement. Heritage introduced the Notice to Bidders, the Table of Contents, Division 16 (electrical specs), Section 13400, and Section 13420 of these plans. Again, in none of these documents is Heritage mentioned or identified. Since none of the writings mention Heritage or identify Heritage as a party to the agreement, and oral testimony was necessary to supply an essential term of the

---

[16]Although there were handwritten notes on the bid, it is undisputed that those were not added by Electric.

agreement, they are insufficient to satisfy the statute of frauds. *See Cohen*, 565 S.W.2d at 232; *Dobson*, 786 S.W.2d at 66.

Heritage argues that, even if there is not a sufficient writing to satisfy the statute, it should be enforced under the partial performance exception to the statute. Although partial performance may be an exception to the statute of frauds in some cases, Heritage has the burden to establish the requisite performance. *See Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex. App.—Texarkana 1989, no writ); *see also Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013) ("Once [the party pleading the statute] meets its initial burden, the burden shifts to the opposing party to establish an exception that would take the verbal contract out of the statute of frauds."). To overcome the operation of the statute, the performance "must be unequivocally referable to the agreement and corroborative of the fact that a contract actually was made." *Wiley*, 770 S.W.2d at 882 (citing *Chevalier v. Lane's, Inc.*, 213 S.W.2d 530 (Tex. 1948)). In addition, this exception is enforced only when "denial of enforcement would amount to a virtual fraud in the sense that the party acting in reliance on the contract has suffered a substantial detriment, for which he has no adequate remedy, and the other party, if permitted to plead the statute, would reap an unearned benefit." *Carmack v. Beltway Dev. Co.*, 701 S.W.2d 37, 40 (Tex. App.—Dallas 1985, no writ) (citing *Tex. Co. v. Burkett*, 296 S.W. 273, 279 (Tex. 1927)). Thus, Heritage must show that (1) *it* has performed acts unequivocally referable to the agreement (2) in reliance on the agreement (3) to its substantial detriment (4) for which it has no adequate remedy and (5) that Electric will reap an unearned benefit such that not enforcing the agreement would amount to a virtual fraud. For example, in *Carmack*, the parties entered into a written

16

listing agreement whereby Beltway would secure a tenant to lease property owned by Carmack in exchange for a six percent commission, one-half to be paid at execution of the lease and one-half one year thereafter. However, although reciting the address of the property, a legal description was not attached to the listing agreement. After Beltway secured a tenant, the agreement was modified to include additional property leased by the tenant, and Carmack paid Beltway one-half of the commission. The tenant occupied the property for almost one year when the property was destroyed by fire, after which Carmack terminated the lease and refused to pay the other one-half of the commission to Beltway. *Carmack*, 701 S.W.2d at 38–39. Beltway sued for its commission, and Carmack asserted a statute of frauds defense based on the lack of a legal description. *Id.* at 38. The court of appeals held that Beltway showed that it was entitled to assert the partial performance exception to the statute of frauds since it had fully performed under the agreement by securing the tenant, that it had suffered a substantial detriment by not being fully compensated for its services, that it had no adequate remedy at law, and that Carmack received the unearned benefit of receiving substantial rental income as a result of Beltway's services. *Id.* at 40–41. The court reasoned that Carmack's "[r]etention of the benefits of the commission agreement without payment of the agreed consideration amounts to a virtual fraud, which justifies enforcement of the commission agreement under the doctrine of part-performance." *Id.* at 41.

By contrast, Heritage points us only to actions *Electric* took and fails to point to any actions it took that are unequivocally referable to its agreement with Electric or that could be considered a partial performance by it of the agreement. In addition, Heritage fails to point out

17

any unearned benefit that Electric will reap such that not enforcing the agreement would amount to a virtual fraud. Therefore, Heritage has failed to establish that it is entitled to avoid the operation of the statute under the partial performance exception.

Therefore, there can be no recovery by Heritage based on a breach of contract.

*(2)    There Is No Evidence of Damages Recoverable Based on Promissory Estoppel*

Electric also asserts that the trial court erred in rendering judgment against it under a theory of promissory estoppel because (a) since the agreement is unenforceable under the statute of frauds, a claim for promissory estoppel is also barred as a matter of law; (b) promissory estoppel is not an affirmative cause of action; (c) there is no evidence that Heritage relied on Electric's bid;[17] and (d) there was no evidence of damages recoverable under promissory estoppel. Since Heritage has failed to show any damages other than those it would recover under the unenforceable contract, we find that there is no evidence of damages recoverable based on promissory estoppel.

Damages for the benefit of the bargain are not available for a claim of promissory estoppel. *Bechtel Corp. v. CITGO Prods. Pipeline Co.*, 271 S.W.3d 898, 927 (Tex. App.—Austin 2008, no pet.). Damages for the benefit of the bargain, recoverable under breach of contract, protect the non-breaching party's expectation interest by placing him in the same position he would have been in had the contract been performed. *Id.* Therefore, expectancy damages such as lost profits are not recoverable under promissory estoppel, rather "only the

---

[17]Electric also asserts that there was factually insufficient evidence of reliance. However, to preserve a factual insufficiency complaint on appeal, a party must have asserted the same in a motion for new trial. Tex. R. Civ. P. 324(b)(1); Tex. R. App. P. 33.1(a)(1)(B). Electric did not file a motion for new trial and failed to preserve this point of error. *Cecil v. Smith*, 804 S.W.2d 509, 512 (Tex. 1991); *In re O.M.H.*, No. 06-12-00013-CV, 2012 WL 2783502 (Tex. App.—Texarkana July 10, 2012, no pet.) (mem. op.).

amount necessary to restore him to the position he would have been in had he not acted in reliance on the promise" is recoverable for promissory estoppel. *Fretz Const. Co. v. S. Nat'l Bank of Houston*, 626 S.W.2d 478, 483 (Tex. 1981) (citing *Wheeler v. White*, 398 S.W.2d 93 (Tex. 1965)). Reliance damages, recoverable under promissory estoppel, are "measured by the detriment sustained." *Wheeler v. White*, 398 S.W.2d 93, 97 (Tex. 1965). These damages "'includ[e] expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed.'" *Bechtel Corp.*, 271 S.W.3d at 926 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 349 (1981)). In *Wheeler*, the Supreme Court explained the reasoning for limiting the available damages:

> Since the promisee in such cases is partially responsible for his failure to bind the promisor to a legally sufficient contract, it is reasonable to conclude that all that is required to achieve justice is to put the promisee in the position he would have been in had he not acted in reliance on the promise.

*Wheeler*, 398 S.W.2d at 97.

In *Nagle v. Nagle*, the Supreme Court considered the effect of the statute of frauds on claims of promissory estoppel and fraud. *Nagle v. Nagle*, 633 S.W.2d 796 (Tex. 1982). In that case, Margie Nagle sought either specific performance or damages against her ex-husband, Frank, when he defaulted on an oral promise to convey to her his one-half interest in her residence. *Id.* at 797–98. In regard to promissory estoppel, the court held that she could not recover because she did not show any injury other than the loss of the bargain injuries she suffered from Frank's failure to convey the property. *Id.* at 800. Regarding the fraud claim, the Supreme Court held that the court of appeals erred in affirming the judgment in favor of Margie

19

by using the loss of bargain measure of damages, i.e., the value of Frank's interest in the house. "By affirming Margie's award for such damages, the Court of Civil Appeals has enforced an oral promise to convey land, despite the Statute of Frauds, merely because Frank did not perform that promise. If we allowed that holding to stand, the Statute of Frauds would become meaningless." *Id.* at 801.

In a subsequent opinion, the Supreme Court considered the effect of the statute of frauds on a fraud claim based on an unenforceable agreement. *Haase v. Glazner*, 62 S.W.3d 795 (Tex. 2001). The court held that the statute of frauds would not bar a fraud claim to the extent a plaintiff seeks reliance damages, i.e., the out-of-pocket expenditures made in reliance on the misrepresentations. *Id.* at 799–800. The court reasoned that "[t]hese kinds of damages are not part of the benefit of any alleged bargain between the parties." *Id*. at 800. On the other hand, to the extent a plaintiff seeks to recover damages for the benefit of a bargain that could not be enforced because the agreement fails to comply with the statute, the court held that the statute of frauds bars the fraud claim.

> If in the face of the Statute of Frauds we permit Glazner's fraud claim to the extent he seeks to recover the benefit of the unenforceable bargain, we deprive the Statute of any effect. The Statute exists to prevent fraud and perjury in certain kinds of transactions by requiring agreements to be set out in a writing signed by the parties. But that purpose is frustrated and the Statute easily circumvented if a party can use a fraud claim essentially to enforce a contract the Statute makes unenforceable.

*Id.* at 799 (citations omitted); *see also Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 637 (Tex. 2007) ("Thus, if the measure of damages Sonnichsen seeks for fraud are the benefit-of-the-bargain damages he sought to recover for breach of contract, his fraud claim also fails. The

viability of Sonnichsen's fraud claim depends upon the nature of the damages he seeks to recover."). This same reasoning has been applied to bar other tort claims seeking to obtain the benefit of an unenforceable contract, including claims for promissory estoppel. *See Lam v. Phuong Nguyen*, 335 S.W.3d 786, 792 (Tex. App.—Dallas 2011, pet. denied) (affirming summary judgment on negligent misrepresentation, fraud, and conspiracy claims since plaintiffs sought benefit of their unenforceable bargain); *Transcon. Realty Investors, Inc. v. John T. Lupton Trust*, 286 S.W.3d 635, 648 (Tex. App.—Dallas 2009, no pet.) (affirming summary judgment on promissory estoppel claim since plaintiff sought benefit of bargain, not reliance, damages); *Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 142 (Tex. App.—Corpus Christi 2006, pet. denied) (promissory estoppel, negligent misrepresentation, and intentional misrepresentation claims barred when plaintiffs sought to recover the benefits of an unenforceable contract); *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 29–30 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (affirming summary judgment on statutory fraud, negligent misrepresentation and conspiracy claims that sought to recover benefit of unenforceable contract, but reversing summary judgment on fraud claim to extent it sought out-of-pocket damages). We conclude, under *Haase* and *Sonnichsen*, that Heritage may recover under its promissory estoppel claim only if there is evidence of damages other than those it seeks to recover as the benefit of its unenforceable contract.

At trial, Heritage secured affirmative jury findings that Electric was liable for breach of contract (Questions 1 and 2)[18] and promissory estoppel (Question 3).[19] In a single damage issue,

---

[18]Question 1 asked,

21

conditioned on an affirmative answer to either Question 2 or Question 3, the jury charge posed

Question 4:

> What sum of money, if paid now in cash, would fairly and reasonably compensate Heritage Constructors, Inc., for its damages, if any, that resulted from the conduct you have found?
>
> Consider the following element of damages, if any, and none other:
>
> The difference between the amount contracted by Heritage Constructors, Inc., with Electrique Corporation for the electrical work on the TexAmericas Center's wastewater improvement project (less the ductbank concrete work) and the amount Chrietzberg Electric, Inc., bid or quoted for that work which Heritage Constructors, Inc., had agreed to pay. You are instructed that any monetary recovery for this element of damage is subject to federal income taxes.
>
> Answer in dollars and cents for damages, if any.

---

> Did Heritage Constructors, Inc., and Chrietzberg Electric, Inc., agree that Chrietzberg Electric, Inc., at an agreed-upon price of $704,857.00, would be the electrical subcontractor to Heritage and would perform the electrical work on the TexAmericas Center's wastewater improvement project?
>
> > In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

Question 2 asked,

> Did Chrietzberg Electric, Inc., fail to comply with the agreement you found in answer to Question 1?

[19]Question 3 asked,

> Did Heritage Constructors, Inc., substantially rely to its detriment on Chrietzberg Electric, Inc.'s promise, if any, and was this reliance foreseeable by Chrietzberg Electric, Inc.?
>
> > You are instructed that a subcontractor's bid is a promise to provide the work described meeting the project specifications at the specified price.

This damage issue limits the jury's consideration of damages to contractual, benefit of the bargain damages. Further, the damage evidence offered by Heritage was through the testimony of Carl, who testified as follows:[20]

[Counsel for Heritage]

Q  . . . What are the monetary damages Heritage seeks against the Defendants for the conduct that you've testified to today and yesterday?

[By Smith]

A  $177,765.10.

Q  And explain to the jury why we have this math that gets to that number.

A  Well, it's the difference between Electrique's bid and Chrietzberg's bid minus the duct bank concrete. So if you start off with $886,400 and you subtract the duct bank concrete in Chrietzberg's bid, then that's the difference in the amount of money we had to pay.

. . . .

Q  Is Heritage asking from this jury only an award for that exact amount?

A  Yes, sir.

Q  Is this the exact dollar amount of Heritage's damages for the failure of Mr. Chrietzberg and his company to comply with the agreement, his promise, I should say, to do the electrical work on the TexAmericas project for $704,857?

A  Yes, sir.

Q  Is this also Heritage's loss that resulted from Heritage relying on Mr. Chrietzberg's promise to do the electrical work for the $704,857 price?

_____

[20]As already noted, Heritage also offered evidence of Electric's bid, Electrique Corporation's bid, and the cost of the duct bank concrete work, as well as its bid to TexAmericas.

A       Yes, sir.

Q       Is this also an economic loss to Heritage that Heritage suffered in reliance on the representations that you testified to that turned out not to be true?

A       Yes, sir.

It is apparent from both the testimony at trial and the single damage issue that the damages Heritage sought under promissory estoppel are identical to the damages it claimed for breach of contract. There was no evidence that distinguished any of the damages Heritage sought for promissory estoppel from the damages it sought for breach of contract, i.e., for the benefit of its unenforceable contract.

Nevertheless, Heritage contends that, in bid construction cases, the measure of damages for promissory estoppel is the difference between the cost the contractor must spend to obtain another subcontractor and the original "subcontractor's initial contract price," citing *Preload Technology, Inc. v. A.B. & J. Construction Co.*, 696 F.2d 1080, 1084 (5th Cir. 1983)[21] and *Traco*, *Inc.*, *a Three Rivers Aluminum Co. v. Arrow Glass Co.*, *Inc.*, 814 S.W.2d 186 (Tex. App.—San Antonio 1991, writ denied). While we may consider the Fifth Circuit's opinion in *Preload*, it is not binding on this Court. *Justice v. State Farm Lloyds Ins. Co.*, 246 S.W.3d 762, 768 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (Frost, J. concurring) (citing *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993)). Further, in *Preload*, the Fifth Circuit did not discuss the proper measure of damages under promissory estoppel since this

---

[21]Although Heritage claims the Texas Supreme Court has cited *Preload* with approval, it was cited for an unrelated point and in no way expressed an approval of the entire opinion. *Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746 (Tex. 1988).

question was not raised. Rather, A. B. & J. contended only that the scope of the work under its bid was different than the work performed by the second subcontractor. *Preload*, 696 F.2d at 1091. Finally, *Preload* was decided before *Haase* and *Sonnichsen*, and its holding regarding the damages recoverable under a promissory estoppel theory, as well as its comments on the effect of the contract being unenforceable under the statute of frauds,[22] are questionable, at best. In *Traco*, which was also decided before *Haase* and *Sonnichsen*, neither the statute of frauds nor the proper measure of damage was an issue in the case.[23] *Traco*, 814 S.W.2d 186.[24]

In this case, there was no evidence that distinguished any of the damages Heritage sought for promissory estoppel from the damages it sought for breach of contract, i.e., for the benefit of its unenforceable contract. Therefore, we sustain Electric's point of error that there is no evidence of damages recoverable under promissory estoppel. Since we have found that Heritage's breach of contract claim is barred by the statute of frauds and there is no evidence of damages recoverable under its promissory estoppel claim, we hold that Heritage is not entitled to judgment on these claims. Having sustained Electric's error on these points, we need not address its other points related to the breach of contract and promissory estoppel claims, or the damages

---

[22]*Preload* declined to rule on whether there was a contract and whether an implied promise is subject to the statute of frauds. *Preload ,* 696 F.2d at 1085 nn. 6 & 13.

[23]The only other Texas court of appeals case we have found recognizing an affirmative cause of action for promissory estoppel employed a reliance measure of damages. *See Frost Crushed Stone Co. v. Odell Geer Constr. Co.*, 110 S.W.3d 41, 47 (Tex. App.—Waco 2002, no pet.).

[24]In its brief, Heritage argues, without citation to authority, that reliance damages in bid construction cases are analogous to the UCC "cover" doctrine, referencing Section 2A.518 of the Texas Business and Commerce Code. Damages available under Section 2A.518 are, by that section's terms, contractual damages. *See* TEX. BUS. & COM. CODE ANN. § 2A.518 (a) (West 2009) ("After *default* by a lessor under the lease *contract . . . .*) (emphasis added).

related to those claims. In addition, we need not address the points of error of Heritage related to the damages awarded under these theories.

*(3) Denying Heritage's Claims for Negligent Misrepresentation Was Proper*

On appeal, Heritage asserts that the trial court erred in denying its motion to disregard the jury's answer to Question 7 and to modify the judgment against Electric to award damages for negligent misrepresentation and in rendering a take-nothing judgment in favor of Chrietzberg based on the jury's answer to Question 5. Question 5 asked the jury whether Electric or Chrietzberg made negligent misrepresentations on which Heritage justifiably relied and that proximately caused damage to Heritage.[25] The jury answered "Yes" as to Electric and "No" as to Chrietzberg. Question 7 asked the jury the amount of damages caused by this conduct, was

---

[25]Question 5 asked,

> Did any of those named below make a negligent misrepresentation on which Heritage Constructors, Inc., justifiably relied, which proximately caused damages to Heritage Constructors, Inc.?
>
> Negligent misrepresentation occurs when --
>
> 1.      a party makes a representation in the course of his business or in a transaction in which he has a pecuniary interest, and
>
> 2.      the representation supplies false information for the guidance of others in their business, and
>
> 3.      the party making the representation did not exercise reasonable care or competence in obtaining or communicating the information.
>
> "Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

26

conditioned on an affirmative answer to either Question 5 or Question 6,[26] and contained this instruction:

> Consider the following element of damages, if any, and none other.
>
> The economic loss, if any, otherwise suffered in the past by Heritage Constructors, Inc., as a consequence of the conduct you have found. You are instructed that any monetary recovery for this element of damage is subject to federal income taxes.

The jury answered, "$0.00."

Heritage challenges the legal sufficiency[27] of the evidence supporting the jury's finding that Chrietzberg did not make negligent misrepresentations to Heritage that proximately caused it damage. Heritage's argument, if we understand it correctly, is that, since Chrietzberg was the only officer of Electric who made any representations to Heritage and the jury found that Electric made negligent misrepresentations, the liability of Electric must be based on the

---

[26]The jury answered "No" to Question 6, which asked if Chrietzberg's negligence proximately caused the occurrence of injury in question.

[27]In determining legal sufficiency, the appellate court determines "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Williams v. Nationstar Mortg., LLC*, 349 S.W.3d 90, 92–93 (Tex. App.—Texarkana 2011, pet. denied). In looking at the evidence, we credit favorable evidence if a reasonable jury could, and disregard contrary evidence unless a reasonable jury could not. *Wilson*, 168 S.W.3d at 827. We consider the evidence in a light most favorable to the verdict, indulging every reasonable inference that supports it, however we may not disregard evidence that allows only one inference. *Id.* at 822. The evidence is legally insufficient if (1) there is a complete absence of evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) there is no more than a mere scintilla of evidence offered to prove a vital fact, or (4) the opposite of the vital fact is conclusively established by the evidence. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010); *In re Estate of Boren*, 268 S.W.3d 841, 848 (Tex. App.—Texarkana 2008, pet. denied).

 The fact-finder, whether a jury or a judge, is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Wilson*, 168 S.W.3d at 819; *Williams*, 349 S.W.3d at 93. Further, it may believe one witness and disbelieve another. *Wilson*, 168 S.W.3d at 819. When there is conflicting evidence, it is the province of the fact-finder to resolve those conflicts. *Id.* at 820. Accordingly, in reviewing all the evidence in a light favorable to the verdict, we must assume that jurors resolved all conflicts in accordance with that verdict. *Id.* If the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the jury. *Id.* at 822; *Williams*, 349 S.W.3d at 93.

misrepresentations of Chrietzberg.  Therefore, since Chrietzberg made misrepresentations and a corporate officer may be personally liable for its own misrepresentations, then the jury must find Chrietzberg liable as a matter of law.[28]  We disagree that Chrietzberg's individual liability has been established as a matter of law.  Heritage is correct that a corporate officer may be personally liable for his or her own misrepresentations, even when acting in the course and scope of employment.  *Gore v. Scotland Golf, Inc.*, 136 S.W.3d 26, 32 (Tex. App.—San Antonio 2003, pet. denied); *see also Weitzel v. Barnes*, 691 S.W.2d 598, 601 (Tex. 1985) (corporate officers may be held personally liable under Deceptive Trade Practice Act (DTPA) for their own misrepresentations).  However, in order to hold an officer personally liable, the plaintiff must still carry its burden of securing a jury finding of individual liability.  *See Light v. Wilson*, 663 S.W.2d 813, 814 (Tex. 1983) (corporate agent exonerated from individual liability in DTPA case when no finding he individually violated DTPA).  When a jury fails to find from a preponderance of the evidence that a fact exists which one party has the burden to prove, this means in law that the party did not discharge its burden of proof.  *C. & R. Transp., Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex. 1966); *Hill v. Winn Dixie Tex., Inc.*, 824 S.W.2d 311, 313 (Tex. App.—Texarkana 1992).

---

[28]Heritage also asserts, without citing authority, that Chrietzberg "judicially admitted his own responsibility when proclaiming, 'I am the corporation.'"  However, a party's testimonial declarations that may be contrary to his position are generally "quasi-admissions" and are not conclusive on the admitting party. *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980).  Before a party's testimony can be conclusive on him or her, it must be shown, *inter alia*, that the statement "is deliberate, clear, and unequivocal, [and t]he hypothesis of mere mistake or slip of the tongue must be eliminated." *Id.*; *United States Fid. & Guar. Co. v. Carr*, 242 S.W.2d 224, 229 (Tex. Civ. App.—San Antonio 1951, writ refused).  We do not believe the testimony cited by Heritage meets this standard.

There is sufficient evidence to support the jury's negative answer regarding Chrietzberg. Although Heritage argues that in answering "yes" in regard to Electric in Question 5, the jury credited almost all of Carl's testimony regarding the various representations allegedly made by Chrietzberg, this is not necessarily true. The jury may believe some parts of a witness' testimony, while discrediting other parts. In answering "yes" in regard to Electric, the jury could have reasonably concluded that the only negligent misrepresentation that proximately caused damages to Heritage was the bid submitted by Electric, since Carl testified he relied on that bid in his final calculations. The evidence in this case shows that Electric contracted with Gerald Reed to estimate the electrical portion of the Project on its behalf. On October 20, Reed faxed Electric its estimate, which coincided exactly with the bid Electric gave to Heritage. Reed testified that there was a discrepancy between the Project plans and its accompanying drawings in regard to lightning protection. Even though he realized there was a discrepancy before the bid was submitted, Reed did not inquire of the project engineer regarding this or any other question he may have had. He did not recall if his estimate included the cost of lightning protection. On February 8, when Chrietzberg explained to Dennis why he was withdrawing his bid, he said he felt there were things that his estimator did not pick up, such as lightning protection. At trial, Chrietzberg testified that Electric's bid did not include lightning protection because "we missed it" since it was not in the drawings. Although the estimate Reed provided Electric itemized several quotes from dealers to supply items required in the Project plans, it did not include any quote from a dealer to supply the items required for lightning protection. From this evidence, a reasonable jury could infer that any failure to exercise reasonable care or competence in

29

formulating the bid was on the part of Reed.  Since Reed was Electric's agent, the jury could reasonably impute his negligence to Electric and find it responsible for negligent misrepresentation.  At the same time, the jury could reasonably find that Chrietzberg, individually, exercised reasonable care in obtaining the information from Reed and incorporating it into Electric's bid.  This is sufficient evidence to support the jury's finding that Chrietzberg did not make a negligent misrepresentation to Heritage.  Therefore, the trial court did not err in entering a take-nothing judgment in favor of Chrietzberg.  We overrule this point of error.

Heritage also challenges the legal sufficiency of the jury's finding of no damages for Electric's negligent misrepresentation and alleges error in the trial court's refusal to modify its judgment to award damages for negligent misrepresentation.  Since Heritage failed to provide evidence of any injury independent of its alleged contractual damages, we find that its negligent misrepresentation claim against Electric must fail.  *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998) (when damages awarded for negligent misrepresentation are identical to damages awarded for breach of contract and plaintiff did not offer proof of economic injury independent of contract damages, negligent misrepresentation claim fails); *Plano Surgery Ctr. v. New You Weight Mgmt. Ctr.*, 265 S.W.3d 496, 502–03 (Tex. App.—Dallas 2008, no pet.) ("When a party's claim could validly sound in both tort and contract, there must be an injury independent of damages for breach of contract [for the party] to recover on its negligent misrepresentation claim."); *Blue Star Operating Co. v. Tetra Techs., Inc.*, 119 S.W.3d 916, 922 (Tex. App.—Dallas 2003, pet. denied) (directed verdict on negligent misrepresentation

30

claim affirmed when appellant did not cite to evidence regarding any injury it suffered or damages it sought that was independent from breach of contract claim).

Heritage argues that its damages for negligent misrepresentation are not barred simply because its damage is only an economic loss, citing *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). While the economic loss rule does not bar Heritage's recovery for its purely economic losses, *see Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 n.14 (Tex. 2011), its claim fails for lack of an independent injury. *D.S.A., Inc.*, 973 S.W.2d at 663. In *D.S.A.*, the jury awarded identical damages to HISD on its breach of contract and negligent misrepresentation claims. *Id.* The Supreme Court held that "[t]he *Formosa* opinion's rejection of the independent injury requirement in fraudulent inducement claims does not extend to claims for negligent misrepresentation or negligent inducement." *Id*. After reaffirming its prior adoption of Section 552B of the Restatement (Second) of Torts[29] and its independent injury requirement, the court stated the rationale for the narrower scope of liability in negligent misrepresentation compared to fraudulent misrepresentation:

> Negligent misrepresentation implicates only the duty of *care* in supplying commercial information; honesty or good faith is no defense, as it is to a claim for fraudulent misrepresentation. Repudiating the independent injury requirement for negligent misrepresentation claims would potentially convert every contract interpretation dispute into a negligent misrepresentation claim.

*Id.* at 664. Whereas the benefit of the bargain measure of damages is available for breach of contract, it is not available for negligent misrepresentation. *Id.* Since the damages for negligent

---

[29]RESTATEMENT (SECOND) OF TORTS § 552B (1977).

misrepresentation were identical to the contractual damages and the plaintiff offered no evidence of any economic injury independent of its contractual damages, the Supreme Court held that it was not entitled to recover under a negligent misrepresentation theory. *Id.*; *see also Plano Surgery Ctr.*, 265 S.W.3d at 502–03; *Blue Star Operating Co.*, 119 S.W.3d at 922.

Similarly, in this case, Heritage points to no evidence it offered at trial of any economic injury independent of its alleged contractual damages. As we have already seen, Carl Smith testified that Heritage was seeking the same damages for negligent misrepresentation as it was for breach of contract. Since Heritage has not shown any economic injury independent of its contractual damages, it is not entitled to any recovery for negligent misrepresentation. We find the trial court did not err in its judgment denying Heritage damages for negligent misrepresentation. We overrule this point of error.

*(4)      Heritage's Recovery of Attorney Fees also Fails*

Electric also asserts that the trial court erred in awarding attorney fees since Heritage should not prevail on its breach of contract claim and since attorney fees are not available for a promissory estoppel claim. Our holdings herein are dispositive of this issue.

"Attorney fees are recoverable from an opposing party only as authorized by statute or by contract between the parties." *Besteman v. Pitcock*, 272 S.W.3d 777, 792 (Tex. App.—Texarkana 2008, no pet.) (citing *Travelers Indem. Co. of Conn. v. Mayfield*, 923 S.W.2d 590, 593 (Tex. 1996)). Since there was no enforceable contract between the parties, Heritage must show it is entitled to an award of attorney fees pursuant to a statute. Heritage claims it is entitled to attorney fees under Section 38.001(8) of the Texas Civil Practice & Remedies Code. This

32

section authorizes attorney fees to be awarded to a party "in addition to the amount of a valid claim and costs, if the claim is for: . . . (8) an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2015). The most basic requirement of this section is that "the party seeking attorney fees must first prevail on a valid contract claim." *Doctors Hosp. 1997, L.P. v. Sambuca Houston, L.P.*, 154 S.W.3d 634, 636 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 201 (Tex. 2004)). Since Heritage has not prevailed on any valid claim, it is not entitled to an award of attorney fees. We sustain Electric's point of error and hold that the trial court erred in awarding attorney fees to Heritage. Since we have sustained Electric's point of error, we need not address Heritage's points of error relating to attorney fees.

We affirm the trial court's judgment in favor of Chrietzberg, individually, and its judgment denying recovery to Heritage on its negligent misrepresentation claims. We reverse the trial court's judgment in favor of Heritage on its breach of contract and promissory estoppel claims and for attorney fees, and render judgment that Heritage take nothing.

Josh R. Morriss, III
Chief Justice

Date Submitted:     December 9, 2014
Date Decided:       March 4, 2015